SOUTHWEST BANK & TRUST
COMPANY, Appellant,

v.

BANKERS COMMERCIAL LIFE
INS. CO., Appellee.

No. 19394.

Court of Civil Appeals of Texas,
Dallas.

Feb. 7, 1978.

Rehearing Denied March 2, 1978.

Paul D. Schoonover, Vial, Hamilton, Koch, Tubb, Know & Stradley, Dallas, Albert Levy, McGuire, Levy, Collins & McCurley, Irving, for appellant.

R. Jack Ayres, Jr., Carl Davis Adams, Kelsoe & Ayres, Dallas, for appellee.

ROBERTSON, Justice.

Bankers Commercial Life Insurance Company sued E. V. Scott and Southwest Bank & Trust Company for damages resulting from the alleged conversion of three cashiers checks. As an alternative theory, Bankers also sought damages based upon Southwest Bank's negligence in permitting Scott to deposit the checks in his checking account at Southwest Bank. Although Scott admitted that he converted the funds to his own use, Southwest Bank defended on the basis of the two-year statute of limitations applicable to suits in negligence and conversion. After trial to the court without a jury, the trial court rendered judgment against Scott for the face amount of the three checks, plus $10,000 exemplary damages, and against Southwest Bank on one of the checks in the sum of $6,480. Southwest Bank is the only appealing party. We reverse and render.

The primary question on this appeal is whether Bankers' claims of conversion and negligence against Southwest Bank are barred by the two-year statute of limitations provided in Article 5526 of the Texas Revised Civil Statutes. Since the cashiers check in question was paid by the issuing bank on July 11, 1968, and Bankers' original petition was not filed until October 23, 1974, the suit is barred unless some recognized tolling principle applies. In this regard, Bankers asserts that the limitation period was tolled by Southwest Bank's participation in a conspiracy to fraudulently conceal the misappropriation. Alternatively, it submits that the cause of action on the check did not accrue until the misappropriation was discovered, and that since the wrong was not discovered until 1976, the suit is not barred by limitation.

### Fraudulent Concealment

Bankers argues that Southwest Bank and Scott conspired to deposit funds of Bankers, a domestic insurance company, into the private account of Scott, one of its officers, in violation of Article 3.14 of the Texas Insurance Code. Allegedly, this conspiracy fraudulently concealed facts concerning the existence of Bankers' cause of action against Scott and Southwest Bank. We disagree. An essential element of a civil conspiracy is an agreement or understanding between the conspirators regarding the object of the conspiracy; common design is the essence of a conspiracy, and there must be a preconceived plan and unity of design or purpose. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex.1969). Stated another way, there must be a "meeting of the minds" on the desired course of action. In the present case, the check was payable to Bankers, and was endorsed by Scott in dual capacities: first, as "E. V. Scott, Treasurer" in his capacity as treasurer of Bankers; and second, as "Veon Scott" in his individual capacity. Although Scott's account was designated "E. V. Scott," the teller nevertheless accepted the check with the "Veon Scott" endorsement. The record

reflects that Scott had done business with Southwest Bank for some time, and that he was afforded certain banking privileges, such as overdraft approvals. According to Bankers, these "irregularities" established a course of dealing which culminated in Scott's being allowed to make the illegal deposit.

■ Despite Bankers' arguments, these showings do not prove the existence of a conspiracy. The overdraft privileges were not unique to Scott, but were allowed to other bank customers as well. According to the testimony of Mr. Yancey, chief executive officer of Southwest Bank, overdrafts were permitted if approved by a bank officer. Even if Scott was a "preferred customer" in the sense that his overdrafts were customarily approved, this does not infer any agreement between himself and the bank to permit illegal deposits. Southwest Bank's agreement to accommodate Scott's strained finances by *legal* means (such as overdraft approval) does not infer a design to also do so *illegally.*

■■ It is true that the existence of a conspiracy is generally a matter of inference, and that direct proof of an agreement to pursue the wrongful purpose is unnecessary. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567 (Tex.1963); *Mims v. Bohn,* 536 S.W.2d 568 (Tex.Civ.App.—Dallas 1976, no writ); *Oliver v. Huckins,* 244 S.W. 625 (Tex.Civ.App.—Fort Worth 1922, writ dism'd). However, vital facts may not be proved by *unreasonable* inferences from other facts and circumstances; the evidence must do more than raise mere suspicion upon which conjecture or speculation regarding a conspiracy's existence may be based. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., supra; Switzer v. Joseph,* 442 S.W.2d 845 (Tex.Civ. App.—Austin 1969, no writ). We conclude that the proof in the present case raises no inference of a conspiracy. Accordingly, we hold that the statute of limitations was not tolled by any fraudulent concealment attributed to Southwest Bank.

## The Discovery Rule

■ As its alternative argument, Bankers asserts that its cause of action against Southwest Bank did not accrue until it actually discovered, or in the exercise of reasonable care, should have discovered the existence of the cause of action. Although this rule has been applied to toll limitations in medical malpractice cases, such as *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967); *Hays v. Hall,* 488 S.W.2d 412 (Tex.1973); fraud, *Ellison v. McGlaun,* 482 S.W.2d 304 (Tex. Civ.App.—Amarillo 1972, writ ref'd n. r. e.), and limited defamation cases, *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976), it has not been extended to the commercial paper context. In deciding whether it should be so extended, we must apply the balancing test employed in *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977), and *Gaddis v. Smith, supra.* These cases balanced the underlying statutory policy of repose against the injustice created by barring the type of suit under consideration. In striking the balance, our supreme court has considered:

(1) The nature of the plaintiff's case, and the type of evidence required to establish and defend the claim;

(2) The length of the limitations period in question, and the wrongful act's susceptibility to discovery within that period; and

(3) The susceptibility of cases to fraudulent prosecution if limitation is tolled.

*See Robinson v. Weaver, supra,* at 21–22; *Gaddis v. Smith, supra; Kelley v. Rinkle, supra.*

■ Since suits concerning commercial paper primarily depend on documentary evidence, there is no reason to presume that evidence would become stale merely because of the passage of time. Further, the necessity of documentary proof lessens the likelihood of fraudulent suits. Accordingly, this case turns on whether Southwest Bank's negligence in the present case was reasonably susceptible to discovery within the prescribed limitations period. We conclude that it was. Nothing in the nature of

the Southwest Bank's act of conversion rendered the act or the resulting injury difficult to discover; instead, the discovery problems stemmed from Scott's fraudulent concealment of the deposit. Since no discovery problems are inherent on the part of Southwest Bank, we hold that the "discovery rule" does not apply to toll the statute of limitations where a bank is sued for conversion on a forged endorsement. In such cases, limitations can only be tolled by proof of the bank's fraudulent concealment of the transaction. No such evidence was adduced here.

Reversed and rendered.