**AMERICAN PETROFINA COMPANY OF TEXAS, Appellant,**

v.

**PANHANDLE PETROLEUM PRODUCTS, INC., Appellee.**

No. 9401.

Court of Appeals of Texas, Amarillo.

Jan. 24, 1983.

---

Wolfram Law Firm, Walter P. Wolfram, Amarillo, for appellant.

Sanders, Saunders, Brian, Finney, Thomas & Smith, Jerry K. Sawyer, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

American Petrofina Company of Texas, called Fina herein, appeals from a judgment rendered by the trial court in favor of Panhandle Petroleum Products, Inc., called Panhandle herein, for the sum of $20,677.25. The judgment sum represents the proceeds of credit card sales which Panhandle allegedly owns. In its pleadings, Panhandle sought to recover the proceeds of the credit card sales on two grounds: (1) money had and received, and (2) conversion. Fina answered by a general denial. After all of the evidence was presented in the trial court, Fina moved for a directed verdict, and Panhandle moved to have the case withdrawn from the jury and judgment rendered on its behalf. The trial court overruled Fina's motion and granted Panhandle's motion. On appeal, Fina challenges both actions by the trial court. Concluding that the evidence fails to conclusively establish each party's position, as asserted in their respective motions, we reverse and remand.

The funds in question derived from credit card sales receipts forwarded to Fina by one L. Geary Taylor. The credit card sales receipts were received by Fina during the period beginning on 10 August 1977 and ending on 27 February 1978. The total sum of the credit card sales receipts in question is $20,677.25.

Before July of 1977, Fina had purchase and sale distributorship contracts with B & T Oil Company, a corporation, and TWB Company, a general partnership. By July of 1977, B & T's and TWB's extended lines of credit with Fina were in arrears in an approximated amount of $130,000.00. Taylor had personally guaranteed each company's line of credit. In mid-July of 1977 (i.e. July 19, 1977), Fina placed B & T and TWB on a cash basis for the future purchase of products. By that action, Fina effectively terminated the purchases of its products by B & T and TWB.

In the latter part of July of 1977, B & T sold all its assets to Panhandle. Subsequently, Taylor became President of Panhandle. At the time of the sale, Panhandle had a Conoco jobbership. A part of the assets purchased by Panhandle were B & T's service stations and equipment. After the purchase, the service stations formerly owned by B & T were furnished Conoco products and no Fina products were supplied to the stations. After the sale of B & T's assets, Taylor paid Fina approximately $70,000.00 (i.e. in September of 1977). Subsequently, in the fall of 1977, Fina filed suit against L. Geary Taylor, B & T, and others in the 108th District Court of Potter County, Texas, to recover its remaining past due balance (i.e. approximately $50,000.00).

On 17 January 1978, Fina and Taylor made a compromise settlement agreement. Among other things, the compromise settlement agreement acknowledged that Taylor had affiliated with Panhandle and that Panhandle had entered into a purchase and sale agreement with Fina for the purchase and sale of petroleum products and that one of the terms of the purchase and sale agreement is that Panhandle will sell products to the general public using Fina, Bank Americard (Visa) and MasterCharge credit cards, and that under the terms of the purchase and sales agreement between Fina and Panhandle, the proceeds of the credit card sales would normally be applied to the credit of Panhandle.

The compromise settlement agreement also stated that Taylor "shall secure an agreement with Panhandle Petroleum Products, Inc. whereby such credit card purchase proceeds will be applied to the payment of the indebtednesses described hereinabove and shall be applied as provided for hereinafter." Panhandle, however, was not a party to the lawsuit nor the compromise settlement agreement. Never-

theless, at the same time the compromise settlement agreement was executed by and between Taylor and Fina, Taylor, purporting to act for Panhandle, signed a letter addressed to Fina, wherein Panhandle assigned all of its future Fina, Bank Americard (Visa) and MasterCharge credit card sales to Fina for the subsequent ten-month period to be applied on Taylor's past due indebtedness with Fina.

The evidence shows that prior to 17 January 1978 (*i.e.* early in that month), Panhandle and Fina had made an agreement whereby Panhandle would become a Fina distributor. However, a written agreement was not signed until 1 February 1978. In this regard, the evidence shows that Panhandle never purchased any products from Fina under the distributorship agreement, never activated an account with Fina and never did business with Fina under the agreement.

On 27 November 1978, Panhandle filed this action against Fina for the proceeds of the credit card sales for the period beginning on 10 August 1977 and ending on 27 February 1978. Fina answered by a general denial. By its first amended original petition (*i.e.* its live trial pleadings), Panhandle alleges that in July of 1977 it purchased all of the assets of B & T Oil, that thereafter, Fina received credit card purchase receipts with respect to Fina credit cards, Bank Americard (Visa) and MasterCharge, that such credit card purchases related to sales by Panhandle, and that Fina wrongfully applied these credit card purchases to the previous indebtedness of B & T Oil Company and to the individual account of L. Geary Taylor. Fina did not respond to this pleading and proceeded to trial on its general denial.

■ In its first point of error, Fina maintains that the trial court erred by granting Panhandle's motion for instructed verdict because the evidence failed to conclusively show that Panhandle was entitled to judgment. Panhandle's cause of action is based on alternative grounds of recovery (*i.e.* money had and received and conversion). To recover on its money had and

received ground, Panhandle must show that Fina holds money (*i.e.* the proceeds from the credit card sales receipts) which in equity and good conscience belongs to Panhandle. *See Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687 (Tex.1951). As stated in *Staats* at 687: " 'The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong.' " Thus, an essential element of Panhandle's ground of recovery under money had and received is that proceeds from the credit card sales in question belong to Panhandle (*i.e.* ownership). *See Gloor v. Richard Gill Co.,* 272 S.W.2d 920, 921 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.); *Farmer's Nat. Bank v. Dublin Nat. Bank,* 55 S.W.2d 567, 572 (Tex.Civ. App.—Eastland 1932, *rev'd on other grounds* 127 Tex. 2, 90 S.W.2d 824); 6 Tex. Jur.2d *Assumpsit* § 6 (1959); and 58 C.J.S. *Money Received* § 22 (1948). Furthermore, to recover under its conversion ground, Panhandle also is required to establish that it had acquired some right or title to (*i.e.* ownership of) the proceeds from credit card sales receipts. *See O'Connor v. Fred M. Manning, Inc.,* 255 S.W.2d 277, 278 (Tex.Civ. App.—Eastland 1953, writ ref'd).

■ In the present case, since ownership of the proceeds of the credit card sales receipts is an essential element of each of Panhandle's grounds of recovery, we first consider whether Panhandle conclusively established that element by the evidence. In this regard, the evidence shows: (1) that Panhandle purchased all of the assets of B & T Oil in July, 1977; (2) that after Fina placed B & T on a cash basis, B & T purchased no products from Fina; (3) that a part of the assets purchased was all of B & T's service stations and equipment; (4) that after the purchase, the service stations formerly owned by B & T operated under the Fina logo; (5) that Panhandle was a Conoco jobber; (6) that after the purchase from B & T, the service stations formerly owned by B & T were furnished only Conoco products from Panhandle and that no Fina products were supplied to the stations; (7) that all of the credit card sales receipts

in question were received by Fina during the period beginning 10 August 1977 and ending 27 February 1978; (8) that B & T had an account with Fina during that period; and (9) that Panhandle had no reimbursement account for credit card sales until after 1 February 1978.

James F. O'Connell, Panhandle's secretary-treasurer, testified at the trial. Mr. O'Connell stated that Panhandle bought B & T's assets on 27 July 1977, that for all practical purposes B & T went out of business at that time, that Panhandle took over B & T's operation and received the credit card sales tickets in question after that date, that the tickets in question related to the business which Panhandle conducted after 27 July 1977, that the tickets in question belonged to Panhandle because Panhandle bought out B & T and that to his knowledge B & T conducted no business during the period in question. However, on cross examination by Fina, Mr. O'Connell further stated that he did not know whether all of the credit card sales tickets in question came from the station's former owner by B & T, that he did not know whether the leases on service stations owned by Fina and leased to B & T were assigned to Panhandle, that after the sale and, unknown to Panhandle, B & T continued to operate, and that he just assumed the credit card sales tickets in question belonged to Panhandle because Panhandle purchased all of the assets of B & T. Thus, under the circumstances, we conclude that there is probative evidence to show that the credit card sales tickets in question derived from Panhandle's business activities after Panhandle purchased all of B & T's assets; however, we further conclude that the evidence fails to conclusively establish that fact. Accordingly, Fina's first point of error is sustained.

In its third point of error, Fina claims that for various reasons, the trial court erred by refusing to grant its motion for instructed verdict. Rule 268 of the Texas Rules of Civil Procedure requires that "[a] motion for directed verdict shall state the specific grounds therefor." On appeal, our review of the trial court's refusal to grant the motion is limited to the specific grounds stated in the motion. *See Home Insurance Co. of New York v. Dacus,* 239 S.W.2d 182, 184 (Tex.Civ.App.—Texarkana 1951, no writ), and the authorities cited therein.

In general terms, Fina's motion states that Panhandle failed "to show or produce any evidence that American Petrofina has converted any property that belongs to Panhandle Petroleum Products." We overrule this contention. In deciding Fina's first point of error, we concluded that although Panhandle failed to conclusively establish ownership of the proceeds from the credit card sales receipts, there is probative evidence to raise that issue.

In its motion, Fina further states, in essence, that Panhandle failed to show that Fina was not a good faith (*i.e.* innocent) purchaser of the personal property in question for value, or that Fina had notice of Panhandle's claim to the property. Fina misperceives Panhandle's burden. Good faith (*i.e.* innocent) purchaser for value without notice is an affirmative defense which Fina must plead and establish by the evidence. *See Seigal v. Warrick,* 214 S.W.2d 883, 884 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.). Fina did not plead good faith purchaser for value without notice as a defense to Panhandle's action and the evidence fails to conclusively establish that defense. Fina's third point of error is overruled.

In summary, we sustain Fina's first point of error and overrule its third point. Our disposition of the first and third points is dispositive of this appeal. Accordingly, the judgment of the trial court is reversed and the cause is remanded to the trial court for a new trial.