Alex STONE and Grace
Stone, Appellants,

v.

FIRST CITY BANK OF PLANO,
N.A., Appellee.

No. 05–90–00031–CV.

Court of Appeals of Texas,
Dallas.

July 3, 1990.

Rehearing Denied Aug. 28, 1990.

Paul J. Franzettk, W. Ralph Canada, Jr., Dallas, for appellants.

Kenneth E. Horn, Dallas, for appellee.

Before McCLUNG, BAKER and THOMAS, JJ.

## OPINION

BAKER, Justice.

The trial court granted the First City Bank of Plano a summary judgment, holding that it was not liable for paying two drafts which named Grace Stone as a joint payee, one without Grace's indorsement and the other on Grace's alleged forged indorsement. Alex and Grace Stone contend that the trial court erred in granting the Bank's motion for summary judgment and in not granting their motion for summary judgment. We affirm in part and reverse and remand in part.

## FACTS

The Stones contracted with Keith Peterson Builders, Inc. to build them a home for $252,620. Mortgage Corporation of the South provided KPBI interim financing and secured the loan with a deed of trust on the property. MCOS requested a deposit of $60,000 from the Stones to indicate their ability to close on the house once it was completed. The Stones made the deposit with the understanding that MCOS would transfer the funds to the title company to apply on the contract price when the transaction closed. However, MCOS issued two drafts totaling $52,000 payable jointly to KPBI and Grace Stone. The Stones were not informed that these drafts were issued.

The first draft for $39,000 was issued on July 25, 1985. The draft was deposited into KPBI's account with the Bank. This draft contained Grace Stone's indorsement, but she claims that her name was forged. The second draft for $13,000 was issued on September 4, 1985. It too was deposited into KPBI's account. This draft contained no indorsement for Grace Stone. The Bank subsequently collected payment for both drafts from the First National Bank of Boston, the payor/drawee bank.

In August or September of 1985, the Stones moved into the house with KPBI's permission even though construction was not complete and the transaction had not closed. The Stones agreed to pay KPBI the interest on the MCOS interim financing as a condition to move in. The Stones paid the interest to KPBI, but KPBI did not tender it to MCOS. In February of 1986, MCOS foreclosed on the property and attempted to evict the Stones. The Stones then became aware of the two drafts that had been issued to KPBI and Grace jointly.

On May 2, 1986, the Stones purchased the property from MCOS for $205,000. MCOS and the Stones executed a mutual release of claims. Subsequently, both MCOS and the First National Bank of Boston assigned to the Stones all of their rights against the Bank.

On August 14, 1987, the Stones instituted this action against the Bank for conversion, for money had and received, and for breaches of the warranties of presentment and transfer. Negotiations were conducted between the parties and a tentative oral agreement was reached. The Bank submitted a proposed settlement agreement and a check for $17,200 to the Stones. The Stones signed the agreement and Alex Stone indorsed the check, but the Stones later changed their minds and returned the check to the Bank unnegotiated and with the indorsement crossed out. The release was not returned to the Bank. Both parties moved for summary judgment, and the trial court granted the Bank's, holding that it was not liable upon any theory asserted.

## THE BANK'S MOTION FOR SUMMARY JUDGMENT

The Bank's motion for summary judgment asserted that it was entitled to a judgment as a matter of law for the following reasons:

(1) There was an enforceable settlement agreement between the Stones and the Bank.

(2) Execution of the MCOS release discharged the Bank because the underlying basis for the litigation was MCOS's wrongful issuance of the drafts.

(3) Execution of the MCOS release constituted a ratification of any forged or missing indorsement.

(4) The Stones were not holders and never gained possession of the drafts.

(5) The $39,000 draft was barred by the two year statute of limitations for conversion.

(6) Adoption of the Texas Business and Commerce Code [1] displaced the cause of action for money had and received.

(7) An imposter induced MCOS to issue the $39,000 draft and indorsed it, and, therefore, the indorsement is effective to transfer title in accordance with Code § 3.405(a)(1).

### STANDARD OF REVIEW

The standards for reviewing a motion for summary judgment are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant is entitled to a summary judgment if it establishes, as a matter of law, that at least one element of a plaintiff's cause of action does not exist or, if it is relying on an affirmative defense, that it has conclusively established all the essential elements of that defense. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex. 1975); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). When both sides have filed motions for summary judgment, the reviewing court may determine whether the granting or denial of any of the motions was error and may reverse the trial court's judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.

1988); *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958).

### 1. The Bank and Stones' Settlement Agreement

The Bank claims that any recovery by the Stones should be limited to $17,200 because there was an enforceable settlement agreement between the Bank and the Stones. Although a settlement agreement appears in the record, the Bank conceded in its brief and in oral argument that the Stones did not deliver an executed release to it or to its attorneys.

■■■ A release, in order to become effective, must be delivered to the person in whose favor it was executed or to a third person in his behalf. *See Pevesdorf v. Union Elec. Light & Power Co.,* 333 Mo. 1155, 64 S.W.2d 939, 949 (1933). *See generally* 76 C.J.S. *Release* § 8 (1952). The written release was ineffective because it was never delivered to the Bank. *See Pevesdorf,* 64 S.W.2d at 949. Any alleged oral agreement is unenforceable as it was not reduced to writing, signed, and filed with the papers as part of the record or announced in open court and entered of record. *See Kennedy v. Hyde,* 682 S.W.2d 525, 530 (Tex.1984); Tex.R.Civ.P. 11. We hold that this defense does not bar recovery.

### 2. MCOS Release

■■ The Bank's second ground for summary judgment asserts that:

Execution of the MCOS Agreement discharged First City from any liability to the Stones. The underlying basis for the Drafts was MCOS's relationship to the Stones as a result of the $60,000 payment. The Stones released and discharged any debt of MCOS to them that formed the basis of the Drafts. Such a release and discharge also discharged a collecting bank such as First City from any further liability to Grace Stone as the payee whose indorsement was allegedly forged.

1. All future references to the Code are to the Texas Business and Commerce Code Annotated (Vernon 1968) unless otherwise stated.

Support for the Bank's contention is predicated solely on their interpretation of *Starcraft v. C.J. Heck Co. of Texas, Inc.,* 748 F.2d 982 (5th Cir.1984). This case analyzed Texas law regarding releases and double recovery in the context of the check collection process. In *Starcraft,* the payee sued the maker of the check. The payee also sued the drawee bank which failed to timely return the check by the midnight deadline in accordance with the Code. The bank in turn sued the maker of the check, its customer. Prior to trial, the payee and maker executed a mutual release. The trial court held that the drawee bank was absolutely liable to the payee but gave the drawee a chargeback against the maker of the check, its customer. On appeal, the bank asserted that the payee received a double recovery because it had received the benefit of the consideration under the release and had recovered against the bank the full amount of the check. The Fifth Circuit held that since the maker was liable to the drawee bank, the drawee bank would be subrogated to the rights that the maker had against the payee. In order to prevent a double recovery, the court held that the release of the maker extinguished the payee's cause of action for absolute liability of the drawee bank. *Starcraft,* 748 F.2d at 988.

This case is distinguishable from *Starcraft.* First, the drawer, MCOS, has no liability to the Bank. Second, the Bank is not subrogated to any rights of MCOS against the Stones. Finally, the Bank's liability, if any, to the Stones is not absolute. In order for the Stones to recover, they must prove their damages, if any, either in their own right or under the causes of action assigned by MCOS and First National Bank of Boston. The Bank's reliance on *Starcraft* is misplaced.

The Bank further contends that it was released under the broad language of the settlement agreement. The Bank points to the language that the Stones release MCOS and "all others who may be liable." Further, the Bank contends that since the rights against it were not specifically reserved in the release, they have been waived by operation of this clause. The Bank asserts no authority for its argument.

■ The mere naming of a general class of tort-feasors in a release does not discharge the liability of each member of that class. A tort-feasor can claim protection only if a release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 422 (Tex. 1984); *Randall v. Dallas Power & Light Co.,* 745 S.W.2d 397, 401 (Tex.App.—Dallas, 1987), *rev'd on other grounds,* 752 S.W.2d 4 (Tex.1988). Unless a party is specifically named or identified in a release, he is not released. *McMillen v. Klingensmith,* 467 S.W.2d 193, 196 (Tex.1971); *State Nat'l Bank v. Farah Mfg. Co.,* 678 S.W.2d 661, 692 (Tex.App.—El Paso 1984, writ dism'd by agr.). We hold that because the Bank was not specifically named or its identity described with particularity in the agreement between MCOS and the Stones, it cannot interpose its protection.

### 3. Ratification

■ The Bank contends that the Stones ratified the forgery by settling with and releasing MCOS. Code section 3.404(a) and (b) provide that an unauthorized signature may be ratified by the authorized signor. An authorized signor can, for example, ratify the unauthorized signature by first knowing of its existence and then by retaining some benefit from it. *See* Tex.Bus. & Com.Code Ann. § 3.404 comment 3 (Tex. UCC) (Vernon 1968); *see also Perkins v. Philbrick,* 443 A.2d 73, 75 (Me.1982). The Bank alleges that by settling their claims against MCOS, the Stones have obtained a benefit. This defense will not apply to the $13,000 draft, as it was not paid over on a forged indorsement. As to the $39,000 draft, the record reflects that the Stones did not know of the forgery until after settlement. Additionally, any benefit that the Stones may have received as a result of the settlement applies to damages in their case in chief. It does not constitute an outright defense. We hold that there has

been no ratification of the unauthorized indorsement.

#### 4. The Stones were not holders and never had possession

The Bank contends that the Stones are not entitled to recovery on any theory because they were not holders nor ever obtained possession of the drafts.

[T]he general rule established by nearly all courts is that an individual who has obtained possession of a draft upon an unauthorized or forged indorsement of the payee's signature and has collected the amount of the draft from the drawee is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the draft was obtained and notwithstanding that the payee's signature was forged by his employee or agent.

The theory underlying this rule has been expressed in a variety of ways, all of which may be summed up in the statement that the possession of the draft on the forged or unauthorized indorsement is wrongful, and when the money has been collected on the draft, the bank, or other person or corporation, can be held as for money had and received and the statute of limitations governing actions on implied contracts is applicable, although there is authority to the contrary. Some courts hold that the act of the bank amounts to a conversion, and recovery may be had in a conversion action. *Generally, the fact that the draft in question did not reach the hands of the payee has been held to be immaterial.*

10 Am.Jur.2d *Banks* § 632 (1963) (emphasis added). In our view, possession by one joint payee is constructive possession by the other and the possessor holds the draft for the benefit of himself and the other payee. *See Cook v. Great Western Bank & Trust*, 141 Ariz. 80, 685 P.2d 145, 151 (App.1984); *House–Evans Co. v. Mattoon Transfer and Storage Co.*, 275 P.2d 268, 270 (Okla.1954); *Hoffman v. First Nat'l Bank of Chicago*, 299 Ill.App. 290, 20 N.E.2d 121, 123 (1939). A bank which pays a joint payee on the other's forged indorsement is liable thereon notwithstanding the other's nonpossession. *See House–Evans Co.*, 275 P.2d at 270; *Hoffman*, 20 N.E.2d at 123.

The Bank directs our attention to *Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce*, 764 F.2d 392 (5th Cir.1985), where the Fifth Circuit, construing Louisiana law, adopted the position that a joint payee must come into possession of a forged instrument before he can assert title thereto. In that case, an insurance agent induced his employer to issue checks for false claims in the names of the joint payees. He then forged the joint payees' indorsements and deposited the checks into his account. The court held that the joint payees failed to show a right of title to the proceeds precluding them from suing on the forged indorsements. That case is distinguishable. First, the drafts were not put into actual possession of any of the payees. Thus, the rule that actual possession by one payee constitutes constructive possession by the other did not apply. Second, there was no showing of a superior right of title to the proceeds in the joint payees. In our case, there is no dispute that the $52,000 in drafts came from the $60,000 that the Stones deposited with MCOS. In our view, the Stones constructively possessed the drafts through KPBI's actual possession. Nonpossession does not afford the Bank a defense to any of the Stones' causes of action.

#### 5. Statute of Limitations

The Bank next contends that the Stones' conversion cause of action on the $39,000 draft is barred by the two year statute of limitations. *See Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.*, 563 S.W.2d 329, 330 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.); TEX. CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). The record reflects and the Stones concede that the conversion cause of action on the $39,000 draft was not filed within two years from when the Bank paid on the forged indorsement. The Stones urge us to adopt the discovery rule in this case. In *Southwest Bank*, this Court held that the discovery rule does not apply to

toll the statute of limitations where a bank is sued for conversion on a forged indorsement. In such cases, limitations can only be tolled by proof of the bank's fraudulent concealment of the transaction. *Southwest Bank*, 563 S.W.2d at 332. In the present case, there has been no assertion of fraudulent concealment against the Bank. The discovery rule does not apply to this case, and we are not inclined to extend it past its application in *Southwest Bank*. We hold that the Stones' cause of action for conversion on the $39,000 draft is barred by the two year statute of limitations.

### 6. Cause of Action for Money Had and Received

█ The Bank asserts that the common law cause of action for money had and received was abrogated by adoption of the Texas Business and Commerce Code. We note that there are no Texas cases considering this issue. There are, however, two federal cases construing Texas law that do consider it. Both conclude that the implied contract action for money had and received survived the Code's adoption. *See Peerless Ins. Co. v. Texas Commerce Bank*, 791 F.2d 1177, 1181 (5th Cir.1986); *International Indus., Inc. v. Island State Bank*, 348 F.Supp. 886, 888 (S.D.Tex.1971). In our view, the opinion of *Peerless* employs sound reasoning, and we adopt it as our own. We note that, in addition to the common law defenses that are available, the Code defenses will be maintainable against a cause of action for money had and received. *See Peerless*, 791 F.2d at 1180; *see also Fidelity & Casualty Co. v. First City Bank*, 675 S.W.2d 316, 319 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). We hold that the implied contract action for money had and received has survived the Code's adoption.

### 7. The Imposter Defense

█ The Bank alleges that an imposter, presumably KPBI, induced MCOS to issue the draft and that, in accordance with the imposter rule, the imposter's indorsement is effective to transfer title. The imposter defense can be stated as follows:

An indorsement by any person in the name of a named payee is effective if an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee.

TEX.BUS. & COM.CODE ANN. § 3.405(a) & (a)(1) (Vernon 1968). Imposter refers to impersonation, but it does not extend to a false representation that the party is the authorized agent of the payee. TEX.BUS. & COM.CODE ANN. § 3.405 comment 2 (Tex. UCC) (Vernon 1968); *see also Fair Park Nat'l Bank v. Southwestern Inv. Co.*, 541 S.W.2d 266, 269 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.).

This defense is not applicable to the $13,000 draft because there is no indorsement by a Grace Stone. In order for the Bank to prevail on this defense as to the $39,000 draft, it must prove that someone impersonating Grace Stone or KPBI induced MCOS to issue the draft to KPBI and Grace Stone as joint payees. It will not be enough to show only that KPBI in its own capacity or as Grace's agent induced the draft's issuance. There is no summary judgment evidence conclusively establishing that an imposter impersonating Grace Stone or KPBI induced MCOS to issue the draft. The evidence raises only a suspicion at the most which will not support a summary judgment. We hold that a fact issue exists as to the imposter defense.

### THE STONES' MOTION FOR SUMMARY JUDGMENT

The Stones contend that they are entitled to a summary judgment as a matter of law. To be proper, every element of the Stones' causes of action must be established as a matter of law and there must not exist any fact issues on any of the Bank's defenses. *See Newsom v. Starkey*, 541 S.W.2d 468, 471 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). First, we find that the Stones have failed to establish conclusively their damages in any of their causes of action. Second, we have previously held that there is a fact issue on the imposter defense as to the $39,000 draft. These fact issues preclude

us from granting the Stones a summary judgment in this case.

## CONCLUSION

We sustain the Stones' first point of error. Because of our disposition of this point, we do not address their other points. We affirm the trial court's judgment dismissing the Stones' cause of action for conversion on the $39,000 draft. We reverse and remand the remaining causes of action for further proceedings.