**MILLER–ROGASKA, INC., Appellant,**

v.

**BANK ONE, TEXAS, N.A. and Citibank Delaware, Appellees.**

No. 05–95–00767–CV.

Court of Appeals of Texas, Dallas.

Aug. 6, 1996.

Ronald E. Holub, Law Offices of Ronald E. Holub, P.C., Dallas, for Appellant.

Brian S. Book, Cynthia Hollingsworth, Gardere & Wynne, L.L.P., Julie E. Blend, Hughes & Luce, L.L.P., Dallas, for Appellees.

Before LAGARDE, WRIGHT and WHITHAM [1], JJ.

## OPINION

WHITHAM, Justice (Retired).

This summary judgment appeal stems from events surrounding the payment of a check. Appellant Miller–Rogaska, Inc., as payee of the check, sued appellees Bank One, Texas, N.A. and Citibank Delaware, for conversion, negligence and gross negligence, money had and received, and breach of fiduciary duty. The trial court granted the

banks' motions for summary judgment on all claims. Miller appeals from the resulting take-nothing summary judgment in favor of the banks. We conclude that the trial court did not err in granting the banks' motions for summary judgment. Accordingly, we affirm.

## FACTUAL BACKGROUND

On or about November 23, 1991, Bullock's, Inc. issued a check in the amount of $87,184.26 made payable to Miller in payment of certain invoices rendered for the sale of merchandise. As it was Bullock's practice to mail checks in window envelopes, Miller's corporate office and mailing address, "225 Fifth Ave. # 204, New York City, New York," appeared beneath its name on the face of the check. The Miller check became mixed in with a number of checks mailed to Fossil, Inc. in Dallas, Texas, another company with whom Bullock's did business. A Fossil check appeared in the window of the envelope. Fossil did not notice the Miller check in the group of checks it received from Bullock's and endorsed the check payable to Miller with a stamped "For Deposit" endorsement bearing the name of "Fossil Inc." Fossil did not forge Miller's endorsement. On December 5, 1991, Fossil deposited the check into its account at Bank One, Texas. At the time of the deposit, Miller, as payee, had not endorsed the check nor had it authorized Fossil to do so.

In early January 1992, Miller notified Bullock's that the invoices had not been paid. Bullock's advised Miller that a check had in fact been issued. Bullock's requested that Miller execute an affidavit of forgery since Miller had not received the check. On January 21, 1992, Miller's president went to the accounting department of Bullock's in Los Angeles, California, and saw a copy of the check with the unauthorized endorsement. While there, Miller's president executed an affidavit of forgery.

After the check cleared, Fossil noticed the error and contacted Bullock's for instructions. As per Bullock's instructions, Fossil

1. The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

returned the money to Bullock's. Fossil issued a check to Bullock's on January 21, 1992. Bullock's deposited the monies into its account at Security Pacific National Bank on January 24, 1992.

Miller attempted to recover the funds from Fossil but learned that Fossil had repaid the funds to Bullock's. Miller then made demand upon Bullock's to replace the check. Bullock's refused to do so because a moratorium had been placed on the issuance of vendor checks commencing January 20, 1992. On January 27, 1992, Bullock's filed a petition in bankruptcy.

Between November 23, 1991, the date of the check in controversy, and January 27, 1992, the date Bullock's filed its petition in bankruptcy, Miller received payments totalling $56,579.01 from Bullock's on the following dates and in the following amounts:

| | |
|---|---|
| November 30, 1991 | $13,996.34 |
| December 7, 1991 | $ 9,918.92 |
| December 14, 1991 | $23,086.72 |
| December 24, 1991 | $ 9,047.47 |
| December 30, 1991 | $ 529.56 |

In response to discovery, Bank One admitted that:

> Bullock's Inc. mistakenly sent [the check] in the amount of $87,184.26 to [Fossil]. The check, drawn on Bullock's account, was made payable to [Miller], but was deposited with a stack of other checks by [Fossil] into their Bank One account on December 6, 1991. Neither Fossil or Bank One noticed prior to deposit that the check was made payable to [Miller].

In response to discovery, Citibank answered as follows: "Bank One presented the check through the Federal Reserve System to [Citibank] for payment to Fossil's Bank One account. In paying over the funds to Bank One, through the Federal Reserve, [Citibank] was entitled to rely and did rely on Bank One's presentment."

In response to discovery, Bank One admitted:

> That on November 23, 1991, Bullock's issued [the check] in the amount of $87,-184.26 made payable to the order of [Miller].

> That [Fossil] deposited the check into its bank account at Bank One.

> That at the time Fossil deposited the check, Miller, as [p]ayee, had not endorsed the check.

> That Bank One accepted the check from Fossil for deposit into Fossil's account on December 5, 1991.

> That Citibank forwarded the funds evidenced by the check to Bank One who then credited the amount of said funds to the bank account of Fossil.

> That Miller has made demand upon [Bank One] for payment of the funds and [Bank One] has refused to pay the same.

> That Miller was the only named payee on the check.

In response to discovery, Citibank admitted:

> That Bullock's wrote [the check], dated November 23, 1991, in the amount of $87,-184.26 payable to [Miller].

> That [Fossil] obtained possession of the check.

> That the check was deposited at Bank One.

> That Bank One accepted the check for deposit.

> That Bank One presented the check through the Federal Reserve System and that the funds were transferred to Bank One through the system.

> That Citibank did not contact [Miller] before Bank One received the funds through the Federal Reserve settlement process.

> That Citibank did not contact Fossil before the funds were paid to Bank One through the Federal Reserve settlement process.

> That [Miller] was the only named [p]ayee on the check.

At the time the trial court granted the banks' motions for summary judgment, Miller had received a distribution in the amount of $14,525.55 from Bullock's bankruptcy estate. Miller is uncertain whether it will receive any further distribution, and, if so, in what amount.[2]

---

2. Miller mentions these "bankruptcy facts" in the summary of facts in its brief. Neither party thereafter refers to them. We do not consider

## THE POSTURE OF THE PARTIES IN THE TRIAL COURT

Miller sued both Bank One and Citibank for conversion under section 3.419 of the Texas Business and Commerce Code (Texas UCC), conversion at common law, negligence and gross negligence, money had and received, and breach of fiduciary duty. Miller also alleged that Bank One failed to act in good faith and in accordance with reasonable commercial standards applicable to the banking industry. Both banks filed motions for summary judgment and maintained that Miller had no cause of action under any theory. On summary judgment, the banks contended that Miller did not receive delivery of the check and was, therefore, not a "holder" as required by the code. The banks asserted that Miller had no rights or ownership interest in the check which would allow it to maintain its causes of action. The banks further asserted that Miller could not maintain causes of action for breach of fiduciary duty or negligence against them because neither bank owed Miller these respective duties. The trial court agreed with the banks, granted their motions for summary judgment, and entered a take-nothing judgment against Miller on all its claims. Miller seeks a reversal of the trial court's summary judgment.

## SUMMARY JUDGMENT STANDARD OF REVIEW

 The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are well established. As mandated by the Supreme Court of Texas, they are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

these "bankruptcy facts" in our disposition of this appeal.

**3.** Miller's first point of error is a global challenge to the trial court's granting of the summary judg-

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). Moreover, when the defendant is the movant, as in the present case, we must be alert to additional rules controlling the summary judgment practice. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). A defendant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of plaintiff's cause of action does not exist. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975).

## CONVERSION AND THE TEXAS UCC

In its first three points of error,[3] Miller contends that the trial court erred in granting the banks' motions for summary judgment for these reasons:

(1) Miller had an ownership interest in the check because Bullock's issued the check by placing the check in the United States mail and because Miller is the named payee and owner;

ment. Miller briefs this point with its more specific challenges. We will address point of error one with each of the specific challenges.

(2) Miller is not required to have possession of the check under Texas law; and

(3) the banks are liable to Miller under the common-law theory of conversion.

The thrust of Miller's argument under its three points of error focuses upon conversion, both statutory and common-law.

## A. Statutory Conversion

■ The first conversion issue presented is whether a payee who never obtained possession of a negotiable instrument may maintain a cause of action under section 3.419 of the Texas UCC, which reads:

(a) An instrument is converted when

(1) a drawee to whom it is delivered for acceptance refuses to return it on demand; or

(2) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(3) it is paid on a forged indorsement.

(b) In an action against a drawee under Subsection (a) the measure of the drawee's liability is the face amount of the instrument. In any other action under Subsection (a) the measure of liability is presumed to be the face amount of the instrument.

(c) Subject to the provisions of this title concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

(d) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (Sections 3.205 and 3.206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor.[4]

For the reasons that follow, we conclude that without possession, actual or constructive, Miller cannot be a holder as required by the Texas UCC and, therefore, cannot maintain a conversion cause of action.

Essential to Miller's cause of action for conversion is its status as a holder. A holder is defined as one in possession of an instrument drawn, issued or indorsed to the party or to its order.[5] The pertinent code provisions regarding issuance, delivery, and status of a holder are all predicated on the rights of a holder, and one cannot be a holder without possession. *See Rex Smith Propane, Inc. v. National Bank of Commerce*, 372 F.Supp. 499, 500 (N.D.Tex.1974) (applying Texas law). In *Rex Smith,* summary judgment was granted in favor of the defendant bank because the plaintiff/payee never had possession of the check. *Id.* We conclude that absent holder status, Miller had no rights in the check or its proceeds and may not maintain a conversion action against the banks under section 3.419.

■ Miller is not a holder because: (1) it did not have possession of the check; and (2) the check was not "issued" to Miller. "Issue" means the delivery of the check to a holder.[6] "Delivery" is defined as a voluntary transfer of possession. TEX.BUS. & COM.CODE ANN. § 1.201(14) (Vernon 1994). The undisputed summary judgment evidence establishes that Miller did not have actual possession of the check. Further, Miller never

**4.** Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex.Gen.Laws 2343, 2429, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex.Gen.Laws 4582, 4603 (current version at TEX.BUS. & COM.CODE ANN. § 3.420 (Vernon Supp.1996) (Texas UCC)). For purposes of this opinion, we will refer to this as section 3.419.

**5.** Act of May 29, 1983, 68th Leg., R.S., ch. 442, § 12, 1983 Tex.Gen.Laws 2575, 2576, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 2, 1995 Tex.Gen.Laws 4626, 4626 (current version at TEX.BUS. & COM.CODE ANN. § 1.201(20) (Vernon Supp.1996)).

**6.** Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex.Gen.Laws 2343, 2408, *amended by* Act of May 24, 1983, 68th Leg., R.S., ch. 290, § 3, 1983 Tex.Gen.Laws 1530, 1531, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex.Gen.Laws 4582, 4584 (current version at TEX.BUS. & COM.CODE ANN. § 3.105(a) (Vernon Supp.1996)).

obtained constructive possession of the check. Constructive possession results in two instances: (1) when a check was delivered to a copayee; and (2) when the check was actually delivered to an agent of the payee. *See Benchmark Bank v. State Farm Lloyds,* 893 S.W.2d 649, 651 (Tex.App.—Dallas 1994, no writ); *see also Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392, 398 (5th Cir.1985) (applying Louisiana UCC which was substantially the same as the Texas UCC). In both situations, a payee is deemed to be in constructive possession of the instrument and therefore entitled to sue on said instrument. Neither of these situations applies here. The check had no copayee and was not delivered to any agent of Miller. Therefore, the lack of the instrument is fatal to Miller's claims because absent possession, actual or constructive, Miller may not become a holder. *See Rex Smith,* 372 F.Supp. at 500.

Nevertheless, Miller advances three propositions to support its conversion cause of action. First, Miller argues that it had a right to possession once the check was deposited into the United States mail. Based upon this "right to possession," Miller contends that it had certain ownership rights to the check and could, therefore, enforce payment of the check. Miller cites no authority for its "right to possession" proposition.

Second, Miller relies on *Interfirst Bank v. Pioneer Concrete,* 761 S.W.2d 857 (Tex.App.—Dallas 1988, no writ), to support its contention that a payee is the true owner of a check and can sue to enforce payment of the check notwithstanding the payee's lack of status as a holder. In *Pioneer Concrete,* the plaintiff was a *copayee* on the check. *Id.* at 857–58. Thus, the plaintiff (copayee) obtained constructive possession of the check as required by the code. *See, e.g., Benchmark,* 893 S.W.2d at 651 (possession by one payee is constructive possession by the other).

Third, Miller attempts to distinguish *Rex Smith.* In *Rex Smith,* Noble Petroleum directed the bank to issue a check payable to the plaintiff. The cashier's check was typed up, signed by the bank officer, and a debit slip was drawn on Noble's account. That same day, Noble was placed into involuntary

bankruptcy. The bank reversed the transaction and canceled the cashier's check. The cashier's check remained on the bank officer's desk and did not leave the bank's possession. *Rex Smith,* 372 F.Supp. at 500. The court granted the bank's motion for summary judgment because the plaintiff never had possession of the check and was, therefore, not a holder as required by the code. *Id.* The court, applying Texas law, noted that the UCC was based on the rights of a holder. *Id.* More importantly, the court found that a check does not operate as an assignment of funds and that a negotiable instrument is not valid until delivered. *Id.*

Miller would have this Court believe that the reasoning of *Rex Smith* is inapplicable to this case because the check in *Rex Smith* remained on the bank officer's desk. Regardless of where the check was in *Rex Smith,* the plaintiff in *Rex Smith* and Miller have the same problem—neither received possession of the negotiable instrument at issue. Bullock's inadvertently mailing the check to Fossil does not establish delivery to Miller because there was no "voluntary transfer" of possession. Further, Miller's argument that being named payee gave it ownership of the check ignores the fact that at any time prior to delivery, Bullock's could have destroyed the check, decided not to pay Miller, or placed a stop payment on the check even after it was mailed. Miller's reasoning also overlooks the negotiation requirement for negotiable instruments. *See id.* We conclude that *Rex Smith* applies to this case and establishes that Miller had no ownership interest in the check because it was not "delivered."

It follows, and we conclude, that a negotiable instrument is the property of the holder under the code, and the code gives the right to enforce payment on an instrument to a holder. Indeed, we note that the legislature recently amended the code to expressly state "an action for conversion of an instrument may not be brought by ... a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or co-payee." *See* Tex.Bus. & Com.Code Ann. § 3.420 (Vernon Supp.1996). This amendment simply resolves the confu-

sion, if any, regarding a payee's right of action absent its status as a holder and confirms our conclusion that Miller had to be a holder in order to maintain its conversion claim. *See id.* cmt. 1. We conclude that a payee who never obtained possession of a negotiable instrument may not maintain a cause of action for conversion under section 3.419 of the Texas Business and Commerce Code.[7]

### B. Common-Law Conversion

Next, we consider whether Miller may maintain a common-law cause of action for conversion. The banks argue that section 3.419 displaced any common-law conversion claim that might arise under these facts. We agree. Not all common-law claims are displaced by the Texas UCC. The statute provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions." TEX.BUS. & COM.CODE ANN. § 1.103 (Vernon 1994). However, common-law claims may only exist to the extent they do not conflict with code provisions. *See Bryan v. Citizens Nat'l Bank,* 628 S.W.2d 761, 764 (Tex.1982); *Signal Oil & Gas Co. v. Universal Oil Prods.,* 572 S.W.2d 320, 330 (Tex.1978).

To prevail on a common-law claim for conversion, a plaintiff must prove it: (1) was the owner of the property; (2) had legal possession of the property; or (3) was entitled to possession of the property. *Whitaker v. Bank of El Paso,* 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ). We have already concluded that section 3.419 required that Miller be a holder of the check, and Miller could not be a holder without possession. *See Rex Smith,* 372 F.Supp. at 500; *see also Friddell v. Greathouse,* 230 S.W.2d 579, 580 (Tex.Civ.App.—Dallas 1950, writ dism'd) (payee must be in possession to maintain suit on check). To allow a common-law conversion claim absent holder status would conflict with section 3.419. Therefore, we conclude that to the extent a common-law

conversion claim could be maintained by Miller absent its status as a holder, such a right of action has been displaced by section 3.419.

For all of the above reasons, we conclude that: (1) Miller had no ownership interest in the check merely because Bullock's placed the check in the United States mail and because Miller was the named payee; (2) Miller was required to have possession of the check, either actual or constructive, to maintain an action for conversion under section 3.419; and (3) the banks are not liable to Miller under the common-law theory of conversion because such a cause of action, under these facts, was displaced by section 3.419. The trial court did not err in granting the banks' motions for summary judgment on Miller's conversion claims. We overrule Miller's first three points of error.

### MONEY HAD AND RECEIVED

In its first and fourth points of error, Miller contends that the trial court erred as a matter of law in granting the banks' motions for summary judgment because Miller had the right to recover the funds from the banks based upon an action for money had and received. To maintain an action for money had and received, Miller had to establish that the banks held money which in equity and good conscience belonged to Miller. *Staats v. Miller,* 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951); *Greer v. White Oak State Bank,* 673 S.W.2d 326, 329 (Tex.App.—Texarkana 1984, no writ). Essential to Miller's claim was that it had ownership in the proceeds of the check. *See American Petrofina Co. v. Panhandle Petroleum Prod., Inc.,* 646 S.W.2d 590, 592 (Tex. App.—Amarillo 1983, no writ). Money had and received is an equitable doctrine applied to prevent unjust enrichment.

Miller contends that the banks still hold money belonging to Miller because by paying the wrong party, they essentially paid their own funds to Fossil and are deemed to be presently holding the funds which came out of Bullock's account and rightfully belong to

---

**7.** We note the language in *Stone v. First City Bank of Plano, N.A.,* 794 S.W.2d 537, 542 (Tex. App.—Dallas 1990, writ denied), which states: *"Generally, the fact that the draft in question did*

*not reach the hands of the payee has been held to be immaterial."* However, *Stone* involved a co-payee situation, which constituted constructive possession of the check by the aggrieved party.

Miller. We disagree. The check proceeds were paid to Fossil, which repaid the funds to Bullock's. Bullock's, the original payor of the funds, is now in possession of the check proceeds. The fact that a check was made out to Miller did not operate as an assignment of those funds to Miller absent delivery. *See Rex Smith,* 372 F.Supp. at 500. Because Miller was not a holder, it had no ownership interest in the check proceeds and could not maintain an action for money had and received. *See American Petrofina Co.,* 646 S.W.2d at 592. We conclude the trial court properly granted summary judgment on Miller's claim for money had and received. We overrule Miller's first and fourth points of error.

## NEGLIGENCE AND BREACH OF FIDUCIARY DUTY

In its first, fifth, and sixth points of error, Miller contends that the trial court erred in granting the banks' motions for summary judgment because the banks are liable to Miller under theories of (a) negligence and (b) breach of fiduciary duty, and because Texas courts have not held that section 3.419 abrogates these common-law theories of recovery. Assuming, without deciding, that the two common-law theories were not displaced by the code, we address negligence and breach of fiduciary duty separately and as follows.

### Breach of Fiduciary Duty

Fiduciary relationships arise when a party occupies a position of confidence toward another. *See Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408, 416 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (op. on reh'g). A fiduciary relationship arises as a matter of law out of certain formal relationships, such as attorney-client, partners, and joint venturers. *See Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962); *see also Blue Bell, Inc.,* 715 S.W.2d at 416. Fiduciary relationships "may arise outside these usual situations when the dealings between the parties have continued for such a period of time that one party is justified in relying on the other to act in [its] best interest." *Blue Bell, Inc.,* 715 S.W.2d at 416.

Although the existence of a confidential relationship can be a question of fact, where there is no evidence to establish the relationship, it is a question of law. *See Crim Truck & Tractor Co. v. Navistar,* 823 S.W.2d 591, 594 (Tex.1992).

Miller was not a customer of Bank One or Citibank, nor did it have any relationship with either bank. Miller presented no summary judgment evidence, and no case authority, to remotely suggest the existence of a fiduciary relationship between it and either bank. Because Miller failed to produce any evidence establishing a fiduciary relationship with either bank, we conclude that as a matter of law, Miller had no fiduciary relationship with either bank. The trial court did not err in granting the banks' motions for summary judgment on Miller's breach of fiduciary duty claim. We overrule Miller's first and fifth points of error.

### Negligence

Miller also argued that the banks were liable to it under a negligence theory. To maintain its negligence action, Miller had to first establish some duty owed to it by the banks. Whether a duty exists is a question of law for the court. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994). This determination is based on the facts surrounding the occurrence in question. *Oldaker v. Lock Constr. Co.,* 528 S.W.2d 71, 77 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.).

Miller relies on *Continental State Bank v. Miles General Contractors,* 661 S.W.2d 770 (Tex.App.—Fort Worth 1983, no writ), to support its claim. In *Continental State Bank,* the plaintiff, a contracting company, had a contract with the bank to make roofing repairs. *Id.* at 772. The bank issued two checks against the contract to an employee of the contracting company. The checks were payable to the contracting company. The bank then cashed the checks on the employee's unauthorized endorsement. *Id.* The Fort Worth court concluded the evidence was sufficient to support the finding that the bank was negligent in cashing the check on the unauthorized endorsement. *Id.* at 774–75.

We do not find *Continental State Bank* to be applicable in the present case. We have already concluded that Miller had no ownership interest or rights in the check because it was not a holder. Miller's lack of holder status eviscerates any claim it may or could have had on the instrument. Further, Miller was not a customer of either bank, nor did it have a relationship with either bank. Miller failed to produce any evidence establishing a legal duty owed to Miller by the banks. Consequently, as a matter of law, Miller's negligence action must fail. The trial court did not err in granting the banks' motions for summary judgment on Miller's negligence claim. We overrule Miller's first and sixth points of error.

## THE EXISTENCE OF FACT ISSUES

In its points of error seven through ten, Miller contends that the trial court erred in granting the banks' motions for summary judgment because of the existence of genuine issues as to material facts and because:

(1) Miller's common-law theories of negligence, gross negligence, conversion, breach of fiduciary duty, and action for money had and received create genuine issues as to material facts;

(2) a genuine issue of material fact existed as to whether the banks' negligent payment of the funds to the wrong party was the proximate cause of Miller's damages; and

(3) a genuine issue of material fact existed as to whether Bank One acted in a commercially reasonable manner in paying the check based on an unauthorized endorsement.

A close reading of Miller's argument under these points identifies only two asserted genuine issues of material facts: first, whether the banks' payment of the funds to Fossil was the proximate cause of Miller's damages; and second, whether Bank One acted in a commercially reasonable manner in paying the check based on an unauthorized endorsement. Proximate cause was never reached as Miller's claims were defeated based upon its inability to prove other threshold elements of its claims. The reasonable commercial standards defense in order to avoid liability for conversion was never reached because Miller failed to state a cause of action for conversion. Because we have held that Miller's claims against the banks fail as a matter of law, we overrule Miller's points of error seven through ten.

Affirmed.