**Affirmed as Modified; Opinion Filed December 13, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00537-CV

**JOSEPH E. ASHMORE, JR., ALLAN CLARK, AND
FINANCIAL RISK SPECIALISTS, INC., Appellants
V.
JMS CONSTRUCTION, INC. AND DAVID PERLEY, Appellees**

On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-10-13260

# MEMORANDUM OPINION
Before Justices Myers, Evans, and Schenck
Opinion by Justice Evans

Joseph E. Ashmore, Jr., Allan Clark, and Financial Risk Specialist, Inc. (FRS) appeal a judgment following a jury trial. Ashmore asserts that the trial court (1) abused its discretion by imposing "death penalty" sanctions against him and (2) erred in excluding witness testimony at trial. Ashmore and FRS both assert that there is no evidence, or the evidence is factually insufficient, to support the jury's findings that both Ashmore and FRS hold money which belongs to appellee JMS Construction, Inc. (JMS Construction) and thus cannot be liable for money had and received as the jury found. Ashmore and Clark also both assert that there is no evidence, or the evidence is factually insufficient, to support the jury's findings that Ashmore and Clark converted monies of JMS Construction. Finally, all three appellants assert that the trial court erred in entering final judgment against them which granted to JMS Construction a

"double recovery" in violation of the one satisfaction rule. We affirm in part because the trial court did not abuse its discretion in enforcing its scheduling order and based on the sufficiency of the evidence to support the jury's liability findings, but we modify in part to eliminate the double recovery so, as modified, we affirm.

## BACKGROUND

David Perley, Michael Alexander, and Gordon Brown were working on a log deal in the Amazon together. Perley owns JMS Construction. Alexander is Perley's friend and business partner. Brown is Alexander's friend and helped to secure the log deal. Perley, Alexander, and Brown attended a meeting at Ashmore's office with Ashmore, Clark, and Jack Wilemon to discuss getting an insurance wrap on the log project. Ashmore is a former probate judge and private practitioner. Clark owns FRS and Wilemon worked with Clark.

### A. Appellants' Version of Events

Ashmore, Clark, and FRS assert that Wilemon and Clark asked if Ashmore would serve as a "paymaster" for several investment opportunities. They assert that Ashmore's duties as paymaster involved holding the funds until the parties instructed him to pay the money out for various investment deals, distributing those funds and cutting checks for the deals brought to him, and paying taxes. Ashmore agreed to act as paymaster.

Ashmore, Clark, and FRS allege that Perley, Brown, and Alexander went to Ashmore's office in November 2006 to discuss an insurance wrap on a log deal with Wilemon and Clark. At that meeting, Wilemon also explained a separate bond deal to Perley, Alexander, and Brown. Specifically, Ashmore, Clark, and FRS allege that Wilemon informed Perley that he would have to invest $1.5 million to initiate the insurance wrap and bond deal.

Ashmore, Clark, and FRS assert that (1) the meeting was between Alexander, Brown, Wilemon, and Clark, and (2) Ashmore's presence at this initial meeting was limited to

–2–

approximately ten minutes. Ashmore testified that he "dropped in while they were having a meeting" but did not stay at the meeting or discuss a bond deal. Ashmore, Clark, and FRS further allege that Ashmore only acted as paymaster, did not take part in the insurance wrap deal, had no money invested in the deal, and never received any compensation for acting as paymaster. Wilemon outlined the insurance wrap deal points in an email dated December 4, 2006 to Perley, Alexander, and Clark as follows:

1. $1,500,000 will be deposited in Joseph E. Ashmore, Jr. account. The wiring instructions for this account will be sent under separate cover.

2. These funds will be held in this account pending a final determination that everything is in place with Morgan Keegan to proceed with this bond issue. Should it be determined that this issue is not ready, then your funds will be returned to you in full.

3. Once the determination is made that the process is ready, you will give instructions to Judge Ashmore to release these funds per Mr. Clark's instructions.

4. Upon the closing and funding of this bond issue, your company will receive 15-20 million dollars. These funds will be sent to Judge Ashmore's account and he will forward the funds to the coordinates that you desire.

Between December 11 and December 14, 2006, Perley wired funds totaling $1.5 million from the JMS Construction account into Ashmore's account.

On December 15, 2006, Perley provided Wilemon with a letter that (1) acknowledged the transfer of funds to Ashmore's account for completion of the bond offer and (2) authorized Clark to disburse the funds "to the appropriate parties to complete the transaction." The letter further stated Perley's understanding based on information from Wilemon that the transaction was likely to close at the end of December. However, the day before the date of Perley's letter, on December 14, 2006, Ashmore transferred $1.5 million from his account to FRS ($150,000) and Pruitt & Pruitt ($1,350,000). Ashmore contends that the funds were transferred because Wilemon and Clark decided to use Pruitt & Pruitt as paymaster instead of himself. Ashmore

–3–

testified that Wilemon instructed him to make the transfer and Clark followed up with him to disburse the funds.

Ashmore, Clark, and FRS all contend that other than the brief time the funds were in Ashmore's bank account and his transfer of the funds, Ashmore did not have any involvement with the bond deal or the insurance wrap transaction. FRS and Clark contend that they did not receive any money other than the $150,000 which FRS returned to Alexander on August 22, 2007.

### B.    Appellees' Version of the Events

Perley testified that he went to Ashmore's office on November 28, 2006 with Alexander and Brown to discuss the insurance wrap with Clark and Wilemon. Perley testified that Ashmore joined the meeting and suggested that Perley, Alexander, and Brown be allowed to invest in a bond opportunity. Perley specifically testified that Ashmore and Wilemon discussed the opportunity as follows:

> And he and Jack had a conversation back and forth where he would say, Well, let's get these boys in the bond deal. And Jack would say, Well, Judge, that's about to close. And then he would say, No, Jack, we can get them in there. They can make some quick money. And Jack would say, No, Judge, that deal is already done. We're going to have that thing closed in 30 days. It will be over. And he said, Jack, get these boys in the bond deal. Let them make some money.

Perley testified that Ashmore represented that (1) the bond deal was his deal, (2) he was in control of the deal and (3) Clark and Wilemon were his associates. Perley testified that he offered to secure $1.5 million in a short time for the bond deal and was advised that the funds would be used to pay fees when the bond was completed. Perley further testified that Ashmore told him that his money "would never be in harm's way and would never leave [Ashmore's] account until the transaction was completed." Perley testified that Ashmore told him he needed to wire $200,000 for the insurance wrap before they could move forward with the bond deal.

–4–

Perley testified that Ashmore said that he "had money involved in the deal, he had skin in the game, and that we were all going to make a lot of money."

On November 30, 2006, Perley, through JMS Construction, transferred $200,000 to FRS for the insurance wrap. Perley testified that he felt comfortable wiring these funds because: (1) Ashmore was involved in the project and would act as trustee; (2) Perley's "money would never be in harm's way"; and (3) his money would be returned if the deal didn't go through. In regard to the bond deal, Perley testified that he "invested in the deal because of Ashmore. That's why we put our money in. We didn't really know Wilemon from Clark from Adam . . . ." Perley specifically testified that he would not have wired any funds if Ashmore had not been involved.

After the $200,000 was wired to FRS, a second meeting took place at Ashmore's office. Perley testified that in addition to himself, the other attendees of this meeting included Wilemon, Clark, Alexander, and Randy Moseley. Perley brought Moseley to the meeting to help him understand how the bond deal was going to work.[1] Perley also participated in a conference call with Clark and Wilemon to discuss the bond deal. Perley testified that he expected that the deal would be done within thirty days and he would make $5 million.

Perley then wired money to Ashmore's trust account and, as of December 14, 2006, had transferred funds totaling $1.5 million, in addition to the $200,000 he had previously transferred to FRS. Perley later discovered that Ashmore had transferred the $1.5 million out of his trust account on December 14, 2006. Perley contends that he did not authorize the transfer of these funds. Perley testified that on December 15, 2006 he prepared the letter dated December 15, 2006—one day after the transfer—instructing Ashmore to "allow Mr. Alan Clark to disburse

---

[1] Moseley was a CFO of a company Perley and Moseley were putting together.

these funds to the appropriate parties to complete this transaction." Perley testified that he signed this letter and "issued" it to Wilemon to hold because he was going on vacation and was told the bond was going to be funded the weekend that he would be gone.

After the initial thirty-day time period had passed and the bond had not closed, Perley testified that he spoke with Clark and Wilemon daily about the bond deal. Clark and Wilemon advised Perley that they were working on closing the bond and that Perley would receive money soon. Perley contends that he continuously demanded the return of JMS Construction's money for the four years following his original investments, but the neither the bond deal or the insurance wrap ever materialized.

### C. Litigation

On October 5, 2010, JMS Construction and David Perley filed a lawsuit against Ashmore, Clark, FRS, and Wilemon asserting claims for breach of contract, negligent misrepresentation, breach of fiduciary duty, fraud, constructive fraud, conversion, unjust enrichment, money had and received, and conspiracy. Ashmore was served with the original petition, which contained requests for disclosure, on October 7, 2010. Ashmore filed his *pro se* general denial on November 1, 2010, but failed to respond to the requests for disclosure which were due on December 21, 2010.

Trial was originally set for September 13, 2011 but the record contains numerous other trial settings.[2] In connection with several of the trial settings, the trial court entered agreed or unopposed orders extending the pretrial deadlines including those deadlines for (1) filing

---

[2] The record contains references to eleven trial settings in addition to the original trial setting.

amended pleadings asserting new claims or defenses and (2) amending or supplementing discovery responses.[3]

On April 15, 2013, the day before the April 16, 2013 trial setting, Ashmore filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. As a result, the case was abated on April 16, 2013 and was not reopened until October 30, 2013. In the order reopening the case, the trial court set a new trial date of January 7, 2014 and ordered that none of the deadlines in the sixth and last scheduling order be changed. The sixth scheduling order contained a February 21, 2013 deadline for asserting new claims or defenses and a March 7, 2013 deadline for amended or supplemented discovery responses.

The trial court continued the trial setting to April 22, 2014, then to May 13, 2014, and finally to August 19, 2014. Although the trial dates were continued, none of the deadlines from the sixth scheduling order were extended. On July 29, 2014, the parties filed an unopposed motion to continue the trial date for the sole purpose of conducting a mediation. The trial date was continued to October 28, 2014.

On August 21, 2014, three days before the mediation, Ashmore filed an amended answer and affirmative defenses and served "amended" responses to requests for disclosure.[4] The amended answer and the discovery responses asserted, for the first time, five affirmative defenses. Ashmore named fifteen potential persons with knowledge of relevant facts and their telephone numbers but did not provide any additional information on those persons. Aside from

---

[3] The trial court prepared the original scheduling order after which the parties agreed to or did not oppose five additional scheduling orders.

[4] In their brief, appellees note that Ashmore titled his discovery responses as "amended" responses to requests for disclosure but appellees have no record of having received an original response to request for disclosure from Ashmore. The record does not contain any response from Ashmore to requests for disclosure before the "amended" responses.

these two responses, the remainder of the disclosure responses contained answers such as "none at this time" or "defendant will supplement pursuant to the Texas Rules of Civil Procedure."

On August 22, 2014, Perley and JMS Construction's counsel sent a letter to Ashmore's counsel advising that such pleadings and discovery were untimely and requesting that the pleadings and response be withdrawn. On October 3, 2014, Perley and JMS Construction moved to strike Ashmore's amended answer and affirmative defenses and responses to disclosures. On October 9, 2014, Ashmore filed a Response to Plaintiffs' Motion to Strike and Motion for Leave to File Amended Answer and Second Amended Disclosures. On October 10, 2014, the trial court granted Perley and JMS Construction's motion and denied Ashmore's motion expressly denying leave to file and striking the amended answer and the responses to disclosure in their entirety.

On October 27, 2014, the day before trial, Ashmore filed an emergency motion to continue the trial date due to an illness. The trial court granted the motion and continued the trial date from October 28, 2014, to December 2, 2014.

The jury trial began on December 2, 2014, and ended on December 17, 2014. During trial, Ashmore moved for an instructed verdict on plaintiffs' claims, including money had and received and conversion. Clark and FRS orally joined in Ashmore's motion. The trial court denied defendants' motion regarding money had and received and conversion and submitted the case to the jury. The jury found that Clark, Ashmore, and Wilemon converted the monies of JMS Construction and assessed harm in the amount of $1.5 million. In keeping with the unchallenged instructions, the jury assessed the percentage of fault attributable to each defendant as follows: (1) Clark, 35%; (2) Ashmore, 30%; and (3) Wilemon, 35%. On the money had and received theory, the jury found that FRS and Ashmore both held money that belonged to JMS Construction in the amount of $1.5 million. In addition, the jury found liability against various

–8–

combinations of appellants for breach of contract, fraud and fraudulent inducement, negligent misrepresentations, and breach of fiduciary duty as an escrow agent, but did not assess any damages for those claims. Finally, in response to a question about conspiracy submitted separately from any other claim, the jury concluded that Clark and Wilemon, but not Ashmore, were part of a conspiracy that damaged JMS Construction. The jury did not answer the damages question that followed the conspiracy question.

On January 15, 2015, Ashmore, Clark, and FRS filed motions for judgment notwithstanding the verdict on the claims for conversion and money had and received. On January 26, 2015, the trial court signed a final judgment awarding JMS Construction judgment against (1) Clark in the amount of $1,050,000 and (2) FRS and Ashmore, jointly and severally, in the amount of $1,500,000.

Ashmore, Clark, and FRS moved for a new trial asserting that the jury's findings in regard to money had and received and conversion were not supported by factually sufficient evidence. Ashmore, Clark, and FRS also asserted that the trial court improperly excluded Alexander's testimony. Ashmore, Clark, and FRS's motions for judgment notwithstanding the verdict and motion for new trial were overruled by operation of law. Ashmore, Clark, and FRS then filed this appeal.

## ANALYSIS

### A. Striking of Amended Answer

Ashmore asserts that the trial court abused its discretion by striking his amended answer and affirmative defenses. We disagree.

Generally, a party may amend its pleadings up until seven days before trial. TEX. R. CIV. P. 63. However, the deadline for filing an amended pleading imposed by rule 63 may be altered by the trial court in a scheduling order issued pursuant to rule 166. *Id.* A party must seek leave

–9–

of court to amend its pleading after the deadline imposed by a scheduling order entered pursuant to rule 166. *Id.* We review a trial court's decision whether to grant leave to file an amended pleading for abuse of discretion. *See Bagwell v. Ridge at Alta Vista Inv. I, LLC*, 440 S.W.3d 287, 292 (Tex. App.—Dallas 2014, pet. denied). The trial court has no discretion to refuse an amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Id*. at 293. The trial court's enforcement of its scheduling order is also reviewed for abuse of discretion. *See Hakemy Bros., Ltd. v. State Bank and Trust Co., Dallas*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and principles. *Id.*

In this case, the trial court entered the sixth scheduling order pursuant to rule 166 and required all amended pleadings asserting new causes of action or defenses to be filed no later than February 21, 2013. The amended answer that Ashmore filed on August 21, 2014, without leave of court, contained five affirmative defenses including prior material breach, failure of condition precedent, justification, capacity, and contribution. The only prior answer filed by Ashmore was a *pro se* general denial dated November 1, 2010. Accordingly, the nearly four years between the filings, Ashmore had never asserted any affirmative defense. In their motion to strike, Perley and JMS Construction argued that they would be unfairly surprised and severely prejudiced if the court were to allow the affirmative defenses because Perley and JMS Construction had not conducted discovery regarding the affirmative defenses and "[t]here has been no new information and/or sudden revelation that has occurred that would justify these affirmative defenses being asserted after four years of being in litigation."

–10–

We summarized above the protracted pretrial procedural history of this case which includes numerous resettings of the trial and six scheduling orders. From this it is clear the trial court worked with counsel and the parties to move this case to trial while accommodating the parties and counsel, but compliance with the scheduling orders became an issue. Based on this record, it was reasonable for the trial court to conclude that allowing the amendment after four years of pretrial preparation would detrimentally affect Perley and JMS Construction's presentation of the case by injecting new substantive matters into the trial. Given that Ashmore's amended answer was (1) untimely filed under the applicable scheduling order; (2) facially prejudicial because it asserted new affirmative defenses; and (3) objected to by Perley and JMS Construction, we cannot conclude that the trial court abused its discretion by striking Ashmore's amended answer, denying Ashmore's motion for leave to file his amended answer, or enforcing its scheduling order.

On appeal, however, Ashmore does not address his failure to assert affirmative defenses until after the time allotted by the scheduling order. Ashmore also does not respond to Perley and JMS Construction's allegations of unfair surprise and prejudice.[5] Instead, Ashmore portrays the trial court's decision to strike the amended answer as an imposition of death penalty sanctions.[6] Ashmore characterizes as a sanction the consequence of his non-compliance with a scheduling order.[7] Ashmore is not being penalized for egregious conduct which warranted a

---

[5] Ashmore filed a "Response to Plaintiffs' Motion to Strike and Motion for Leave to File Amended Answer and Second Amended Disclosures" on October 9, 2014. The motion, however, only addresses Ashmore's motion for leave and does not address appellees' motion to strike.

[6] A trial court may impose any appropriate sanction under rule 215.2 of the Texas Rules of Civil Procedure, including striking out pleadings or parts thereof, if a party is abusing the discovery process. *See Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores, Inc.*, 418 S.W.3d 229, 232 (Tex. App.—Dallas 2013, pet. denied). These sanctions, that adjudicate a claim and preclude presentation of the merits on the case, are often referred to as "death penalty" sanctions. *Id.*

[7] This is sometimes a tactical strategy. *See infra* n. 8.

discovery sanction. *See*, *e.g.*, *Cire v. Cummings*, 134 S.W.3d 835 (Tex. 2004) (pleadings stricken as a discovery sanction for refusing to disclose and later destroying discoverable audiotapes). To the contrary, Ashmore is being held accountable for his failure to assert new defenses in the case after the deadline in the sixth (last) scheduling order in accordance with rules 63 and 166. *See* Tex. R. Civ. P. 63, 166.

## B. Striking of Disclosure Responses

Ashmore asserts that the trial court abused its discretion by striking his amended responses to requests for disclosure. Ashmore specifically argues that the trial court was required to consider lesser sanctions before granting Perley and JMS Construction's motion to strike because the striking of amended disclosure responses constituted death penalty sanctions. We disagree.

Perley and JMS Construction's motion sought to strike the responses to requests for disclosure filed after the deadline set by the sixth scheduling order because Ashmore failed to explain "why these [15] witnesses were not disclosed sooner" and allowing the discovery responses would result in "severe and unfair prejudice" to Perley and JMS Construction. Among other reasons they argued,

> Because of Ashmore's complete failure to disclose these witnesses timely, Plaintiffs did not conduct discovery as to these persons and/or take their depositions nor did the Plaintiffs attempt to obtain more details pertaining to these individuals from any of the Defendants.

Thus, the motion articulated the standards for automatic exclusion of untimely discovery contained in rule 193.6. *See* Tex. R. Civ. P. 193.6. We, therefore, analyze the trial court's decision to strike Ashmore's discovery responses according to the standards in rule 193.6:

> In discussing Rule 193.6, we have explained, "The rule is mandatory, and the penalty—exclusion of evidence—is automatic, absent a showing of: (1) good cause or (2) lack of unfair surprise or (3) unfair prejudice." *Oscar Luis Lopez v. La Madeleine of Texas. Inc.,* 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006, no pet.). We continued, "The sanction of automatic exclusion of undisclosed

–12–

evidence, subject to the exceptions set forth in the rule, is well established. The party offering the undisclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record." *Id.* (citations omitted). The trial court applied the proper standard under Rule 193.6. *See id.*

*See In re Staff Care, Inc.*, 422 S.W.3d 876, 882 (Tex. App.—Dallas 2014, no pet.) (concluding that trial court properly analyzed whether or not to strike discovery responses under Rule 193.6 and not pursuant to a death penalty analysis).[8] Under Rule 193.6, a party who fails to timely make, amend, or supplement a discovery response may not introduce in evidence the material or information that was not timely disclosed or offer the testimony of a witness who was not timely identified, unless the trial court finds that (1) good cause exists for the failure to timely make, amend, or supplement the response, or (2) the failure will not unfairly surprise or prejudice the other parties. *See* TEX. R. CIV. P. 193.6.

As he did regarding the striking of his untimely amended answer, Ashmore characterizes the trial court's decision to strike the disclosure responses as an imposition of death penalty sanctions. Once again, Ashmore confuses a consequence for his failure to file timely disclosure responses with a discovery sanction. As stated above, the sixth (last) scheduling order had a March 7, 2013 deadline for serving amended or supplemented discovery responses. Ashmore had the burden to establish good cause for the untimely response or lack of unfair surprise or unfair prejudice. *See* TEX. R. CIV. P. 193.6(b). If Ashmore failed to meet this burden, then under rule 193.6, the trial court's decision to strike the responses should be affirmed. *See Cunningham v. Columbia/St. David's Healthcare System, L.P.,* 185 S.W.3d 7, 13 (Tex. App.—Austin 2005, no pet.). We review this decision under an abuse of discretion standard. *Id.* This

---

[8] Unlike the present case, when parties do not argue in the trial court or court of appeals for the application of rule 193.6 but instead frame the issue under rule 215.2, we have limited our analysis to rule 215.2. *See, e.g., Associated Air Ctr. LP v. Tary Network Ltd.*, No. 05-13-00685-CV, 2015 WL 970664, at *3, *5-*6 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (trial court's ruling on motion to strike summary judgment evidence and prohibit its admission at trial pursuant to rule 215.2 for failure to produce documents and answer deposition questions analyzed on appeal under rule 215.2; no party raised rule 193.6 in the trial court or appellate briefs).

Court may not substitute its judgment for that of the trial court absent a clear abuse of discretion. *Id.*

Here, Perley and JMS Construction argued that the late-filed disclosure responses would cause unfair surprise and prejudice. Perley and JMS Construction specifically argued that Ashmore named fifteen potential persons with knowledge of relevant facts in the disclosure responses whom they did not have the opportunity to depose or otherwise conduct discovery to learn the substance of those witnesses' testimony. In addition, the disclosure responses asserted, for the first time, five affirmative defenses. Ashmore did not address the reason for his untimely discovery or appellee's assertions of unfair surprise in his response to the motion to strike. Ashmore simply noted that Alexander had only recently reached out to him and that Alexander provided new information. Ashmore did not provide to the trial court at the hearing or in his brief before us any meaningful reason for his failure to speak with Alexander prior to October 2014, or prior to the discovery deadlines. Accordingly, we cannot conclude that the trial court abused its discretion in implementing the automatic exclusion of untimely discovery responses pursuant to rule 193.6 by striking Ashmore's disclosure responses. We resolve Ashmore's first issue against him.

### C.     Exclusion of Testimony

Ashmore asserts that the trial court abused its discretion in excluding the testimony of Michael Alexander as a fact and rebuttal witness at trial on the basis that Ashmore failed to timely disclose Alexander under rule 193.6 of Texas Rules of Civil Procedure. We disagree.

#### 1)     Standard of review

As stated above, a party who fails to timely make, amend, or supplement a discovery response may not offer the testimony of a witness who was not timely identified, unless the trial court finds that (1) good cause exists for the failure to timely make, amend, or supplement the

response, or (2) the failure will not unfairly surprise or prejudice the other parties. *See* TEX. R. CIV. P. 193.6. The burden of establishing good cause is on the party calling the witness and a finding of good cause must be supported by the record. *Id.* We review the trial court's exclusion of a witness on nondisclosure grounds for an abuse of discretion. *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.).

### 2) Additional facts

On August 21, 2014, Ashmore served "amended" responses to requests for disclosure despite the fact that the sixth (last) scheduling order had a March 7, 2013 deadline for serving amended or supplemented discovery responses.[9] On October 9, 2014, Ashmore filed a response to plaintiffs' motion to strike and motion for leave to file amended answer and second amended disclosures. The second amended disclosures were attached as an exhibit to the motion and, for the first time, listed Alexander as a fact witness. At trial, the following exchange took place:

The Court: Well, we talked about this in the pretrial. Why is it that all of this information only became known after the designation deadline?

Ashmore's counsel: He was only willing to testify or talk to us at a point when he told us that his conscious [sic] changed and he had to tell the truth. He was going to stay on their side with their story, which I don't want to say much more about that because it will just -- he would have testified in a way that is untruthful, and now he wants to tell the truth. So he came out of nowhere and came to us. I didn't find the guy. He came to Joe, not myself. But then I came and I met with him personally. And so if he's not credible, that's fine, cross-examine him.

The Court: Well, again, we talked about this at the pretrial hearing. I understand that -- and this is part of the problem of taking over a case from another lawyer. But just because you, the lawyers, might not have known of the situation, there is nothing that's been shown that the parties didn't know

---

[9] The "amended" responses served by Ashmore did not list Alexander as a fact witness.

|  | about his knowledge of anything. Everybody knew about him from the beginning. He could have been noticed and deposed years ago. So that request is denied. |
| Ashmore's counsel: | Your Honor, the knowledge that we knew was different than the knowledge that we learned. This is new knowledge. We only learned of the new knowledge now. This guy was singing a different tune then. So this is new. |
| The Court: | I don't think that's the inquiry. Everybody knew about his involvement from day one. He could have been noticed and deposed. That's the Court's ruling. |

The trial court also entered an order denying Ashmore's motion for leave to file the second amended disclosures.

### 3) Analysis

As discussed above, the burden of establishing good cause was on Ashmore and a finding of good cause must be supported by the record. Ashmore's sole justification for his late disclosure of Alexander was that Alexander only recently changed how he would testify. Ashmore cites no reason for his failure to speak with Alexander prior to October 2014, or prior to the discovery deadlines. Further, rule 194.2(e) requires the disclosure of potential witnesses, not just favorable witnesses. Ashmore concedes he knew about Alexander as a witness, yet Ashmore did not explain to the trial court or us what was his good cause for not disclosing Alexander during the three and one-half years discovery period even if by doing so Ashmore would have disclosed a potentially unfavorable witness. The trial court indicated it grasped that by commenting that Alexander could have been noticed and deposed years ago thereby learning within the discovery period the substance of Alexander's testimony and, by implication, whom it favored.

Ashmore further argues in his appellate brief that Perley and JMS Construction would not have been unfairly surprised because Alexander was known to all parties. Ashmore, however, did not raise this argument below in the trial court thereby not preserving this argument for our

–16–

review.  *See* TEX. R. APP. P. 38.1; *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015) (alternate argument for avoidance of lien foreclosure not raised in trial court not preserved for appellate review).

Moreover, to obtain reversal of a judgment based upon error of the trial court for exclusion of evidence, the following must be shown:  (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment.  *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex. 1989). Even if we were to conclude that error occurred, Ashmore would still need to demonstrate that the alleged error likely caused rendition of an improper judgment.  Ashmore contends that Alexander would have testified that:  (1) Alexander was heavily involved in the deal; (2) Ashmore just stopped by the first meeting to introduce himself; (3) Ashmore made no representations about the bond deal, that the money would be protected, or a guaranteed return; (4) Ashmore made no representations that the money was used to pay fees and would stay in his account until authorized or that he had skin in the game.  This proposed testimony was presumably based upon Alexander's affidavit, which was submitted as an exhibit to Ashmore's motion for leave to file his amended answer and second amended disclosures.   The testimony described above and in the affidavit, however, does not negate the agreement described in the December 4th email that (1) Perley's money was to remain in Ashmore's account until Perley authorized the release of the funds, or (2) that the funds would be returned in full if the bond was not ready.  As Alexander's proposed testimony could only contradict but not negate as a matter of law Perley's testimony that he did not consent to the transfer of money out of Ashmore's account, we cannot conclude that the trial court's act of exclusion probably caused the rendition of an improper judgment against Ashmore on JMS Construction's claims for conversion and money had and received.

For these reasons, we conclude the trial court did not abuse its discretion in excluding Alexander's testimony and, even if the trial court had abused its discretion, that it did not cause harmful error. We resolve Ashmore's second issue against him.

## C.     Sufficiency of the Evidence

Ashmore and FRS assert that the evidence was factually and legally insufficient to support the jury's findings regarding the claim of money had and received. Ashmore and Clark assert that the evidence was factually and legally insufficient to support the jury's conclusions regarding the claim of conversion.

### 1)     Standard of Review

The standard of review for the denial of a directed verdict is a legal sufficiency or "no evidence" standard of review. *See Mauricio v. Castro*, 287 S.W.3d 476, 478–79 (Tex. App.—Dallas 2009, no pet.). In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *Id.* at 479.

When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In conducting our review of the sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.). "[Jurors] may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *City of Keller*, 168 S.W.3d at 819 (footnotes omitted).

The starting point generally of a legal or factual sufficiency review is the charge and instructions to the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003). This is necessary in order to "first have a clear understanding of the evidence that is pertinent to [the appellate court's] inquiry." *Id.* When there is no objection to the form of a charge brought forward in an issue on appeal, we should assume the charge is correct without deciding that issue and evaluate the sufficiency of the evidence against the charge. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009) ("Because there was no objection to the charge as submitted, we assume, without deciding, that the instruction was correct and measure the evidence by the charge as given.") (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)).

### 2) Money Had and Received

The jury found that Ashmore and FRS held money in the amount of $1.5 million which in equity and good conscience belonged to JMS Construction. Ashmore and FRS each contend that the evidence supporting this conclusion was legally and factually insufficient. FRS alternatively argues that if FRS did hold money which belonged to JMS Construction then it only held $150,000 not $1,500,000.

#### a) Jury charge

We begin with the jury charge which provided the following instruction on money had and received:

> Do any of those named below hold money, which in equity and good conscience belongs to JMS?
>
> Answer "Yes" or "No" for each of the following:
>
> FRS: _____Yes_____
> Joseph Ashmore: _____Yes_____
>
> For the purposes of this question, whether a Defendant acquired the money wrongfully is irrelevant; the action is not premised on wrongdoing. The sole

inquiry is whether the Defendant received the money that rightfully belongs to a Plaintiff.

### b) Ashmore

Ashmore contends that the evidence is insufficient to support the jury's conclusion that he holds money which in good conscience belongs to JMS Construction because there is no evidence or factually insufficient evidence that he was unjustly enriched by temporarily holding JMS Construction's money. Ashmore further argues that he transferred the $1.5 million in accordance with Perley's intent for how Ashmore should handle the money. Ashmore also argues that there is no evidence that he "held" the money after he was directed to transfer the money out of his account. Ashmore further argues that once the funds were transferred into Ashmore's trust account, JMS Construction lost legal title to the funds. Lastly, Ashmore argues he cannot be liable for transferring the money because an express contract governed the transaction. We conclude each of Ashmore's arguments is without merit.

The jury charge for money had and received did not contain any mention of unjust enrichment. The charge only asked whether Ashmore received money that belonged to JMS Construction. Ashmore did not object in the trial court or complain in his appellate brief in any issue that the charge on money had and received failed to instruct the jury on an unjust enrichment requirement. Because we evaluate the sufficiency of the evidence against the charge as submitted—*see Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 112—Ashmore's contention that no evidence showed he benefitted from holding the money is not relevant to the jury's answer to the money had and received question in the charge. We also note there is some evidence that Ashmore was to receive up to $50,000 for his role in the transaction. Accordingly, we decide this argument against Ashmore.

We also disagree with Ashmore's assertion that he transferred the funds in accordance with Perley's direction for how Ashmore should handle the money. By email dated December 4,

–20–

2006, Wilemon informed Perley and Alexander that the $1.5 million would be held in Ashmore's account "pending a final determination that everything is in place with Morgan Keegan to proceed with this bond issue. Should it be determined that this issue is not ready, then your funds will be returned to you in full." The email went on to state that "[o]nce the determination is made that the process is ready, you will give instructions to Judge Ashmore to release these funds per Mr. Clark's instructions." Perley testified that he understood this email to mean that the "money would not be released until the Morgan Keegan bond deal was finalized, because the money was used to pay fees on the bond." Between December 11 and December 14, 2006, it is undisputed that Perley wired funds totaling $1.5 million from the JMS Construction account into Ashmore's account. On December 14, 2006, Ashmore transferred the funds out of his account to FRS ($150,000) and Pruitt & Pruitt ($1,350,000). There is nothing in the record to indicate, and no party argued, that "everything [was] in place with Morgan Keegan to proceed with this bond issue" at the time Ashmore transferred the funds out of his account. Ashmore did not return the $1.5 million to JMS Construction.

Perley testified that he did not authorize the transfer of these funds out of Ashmore's account. In fact, Perley specifically testified that he was not asked by Ashmore for authority to transfer the $1.35 million and the $150,000 prior to or on December 14, 2006. There was, however, conflicting evidence about Perley's authorization for Ashmore to transfer the money after the fact. Perley and others testified that on December 15, 2006 Perley signed a letter dated that same date that authorized Clark to authorize Ashmore to transfer the money. The December 15, 2006 letter stated that Perley's understanding and purpose in authorizing the transfer was to close the transaction approximately at the end of December. Nothing in the letter authorized a transfer before the letter was signed nor changed any term of the agreement. And nothing in the record indicates that the transfer of the funds resulted in closure of the transaction. As we

–21–

recounted above, Perley testified the terms included Ashmore's agreement to hold the funds until everything was in place to close the bond transaction and that if it did not close Ashmore would return JMS's $1.5 million to JMS Construction. Although Ashmore and other witnesses provided conflicting testimony, neither side established their position as a matter of law. The jury, therefore, had to evaluate the credibility and weight of the evidence and it apparently chose to believe Perley which the jury was authorized to do. *See City of Keller*, 168 S.W.3d at 819 ("[Jurors] may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.") (footnotes omitted). The testimony of Perley corroborated by the December 4th email stating the deal terms which are not contradicted or superseded by the December 15th letter supports the jury's decision, so we cannot conclude the jury's verdict was contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. Thus, we conclude that Ashmore did not establish legal or factual insufficiency so the jury was entitled to reject Ashmore's contention that his transfer of JMS Construction's money was in accordance with Perley's intent or express or implied authorization.

Ashmore also argues that there is no evidence that he "held" the money after he was directed to transfer the money out of his account. Ashmore did not cite any case law in support of his assertion that money had and received legal theory required Perley to prove Ashmore was in continuing possession of the funds. Perley and JMS Construction, however, cited numerous cases which conclude that a defendant may be liable under a money had and received claim even if he no longer holds the money. *See Pickett v. Republic Nat.l Bank of Dallas,* 601 S.W.2d 405 (Tex. App.—Tyler 1980, aff'd) (claim for money had and received upheld even though recipient of money had been mistakenly been paid to third parties) aff'd 619 S.W.2d 399 (Tex. 1981) (per curiam); *H.E.B., LLC v. Ardinger*, 369 S.W.3d 496, 509 (Tex. App.—Fort Worth 2012, no pet.) (H.E.B. spent $1.3 million paid by Persistence Capital after parties rescinded purchase agreement

–22–

subjecting H.E.B. to claim by creditor of Persistence Capital for $1.3 million under the equitable principles of money had and received); *Greer v. White Oak State Bank*, 673 S.W.2d 326 (Tex. App.—Texarkana 1984, no pet.) (Bank allowed to pursue money had and received claim against depositor to whom Bank had given immediate credit for deposited insurance check even though depositor had used immediate credit to pay off liens on insured property before insolvency of insurer resulted in dishonor of deposited insurance check). Because Ashmore does not cite authority to support his argument, we decline to add an element to the common law theory of money had and received. Instead, we find Ashmore's argument unpersuasive.

Ashmore next argues that once JMS Construction transferred the funds to Ashmore's account, those funds no longer belonged to JMS Construction and it could not assert an equitable claim for money had and received against Ashmore. Essentially, Ashmore argues that because JMS Construction no longer had an ownership in the funds, it could not assert a money had and received claim. In support of this assertion, Ashmore cites *Austin v. Duval*, 735 S.W.2d 647, 648–49 (Tex. App.—Austin 1987, writ denied) and *Miller-Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 662 (Tex. App.—Dallas 1996, no writ). In *Austin*, the ownership rights to the money at issue were extinguished pursuant to the express terms of a contract between the parties (first option contract). 735 S.W.2d at 648. The court noted that the parties alleging a right to the money could not do so "absent some showing of fraud or other error in the first transaction." *Id.* Unlike *Austin*, however, Ashmore has not cited to any express language of any agreement which extinguished JMS Construction's right to the money.

In *Miller-Rogaska*, a buyer of merchandise made a check payable to Miller but never delivered it to Miller, instead mailing the check to another creditor who deposited the check to its account. 931 S.W.2d at 657. The court noted that it was "[e]ssential to Miller's claim that it had ownership in the proceeds of the check" but concluded that "a check made out to Miller did not

operate as an assignment of the funds to Miller absent delivery." *Id.* at 663. Here, Perley testified he did not authorize the transfer of funds out of Ashmore's account indicating his belief that he owned the funds. The December 4th email of deal terms also provided that Ashmore was to hold JMS Construction's funds and return the funds to JMS Construction if the transaction did not consummate. Accordingly, Ashmore did not establish as a matter of law that the funds no longer belonged to JMS Construction once the funds were transferred to Ashmore's account. Because there was evidence the jury was entitled to evaluate and believe, the jury's verdict that necessarily viewed the funds as belonging to JMS Construction was not contrary to the overwhelming weight of evidence as to be clearly wrong and unjust.

Lastly, Ashmore argues that JMS Construction cannot recover under a theory of money had and received because an express contract covered the subject matter of the dispute between JMS Construction and Judge Ashmore. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, with certain exceptions not relevant here.") (internal citations omitted); *MGA Ins. Co. v Chesnutt*, 358 S.W.3d 808, 815 (Tex. App.—Dallas 2012, no pet.) (same). Ashmore argues that Perley's December 15th letter was an express agreement authorizing Ashmore to transfer the funds out of Ashmore's account. Here, the December 4th email provided that Perley's money was to remain in Ashmore's account until Perley authorized the release of the funds, or the funds would be returned in full if the bond was not ready. The December 15th letter does change the requirement that completion of the bond transaction was required in order to transfer the funds. It is undisputed that the bond transaction did not close. We have previously discussed the December 4th and December 15th documents when examining whether they express Perley's intention for the handling of the funds in Ashmore's account and whether Ashmore acted

–24–

consistently (even if preemptively) in conformity with Perley's intent and found Ashmore did not. For the reasons stated therein, we disagree with Ashmore's assertion that there was an express agreement that Ashmore was allowed to transfer the funds out of the account. Further, this Court has recognized an exception to a contract barring recovering for money had and received where there is evidence of fraud, bad faith, or illegality. *See McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 828 (Tex. App.—Dallas 2010, no pet.). In this case, JMS Construction alleged a fraud claim and the jury concluded that Ashmore did commit fraud against JMS Construction, although the jury did not award damages for fraud. Accordingly, we cannot conclude that the jury was unable to assess liability for money had and received against Ashmore.

Having reviewed all of Ashmore's arguments, we conclude that the evidence was legally and factually sufficient to support the jury's findings regarding the claim of money had and received against Ashmore.

### c)　FRS

FRS makes three of the same arguments: (1) there can be no recovery for unjust enrichment if the same subject is covered by an express contract; (2) FRS no longer is in possession of the funds; and (3) no evidence of FRS being unjustly enriched. As we have already analyzed these arguments above, we need not address them again here and, accordingly, we reject FRS's argument that it is not liable for money had and received. We, however, agree with FRS that the amount of damages awarded against FRS on this claim be modified from $1.5 million to $150,000.

On December 14, 2006, Ashmore transferred $150,000 of the $1.5 million in funds he received from JMS Construction to FRS. The amount of $150,000 was the only amount within FRS's control as Ashmore transferred the remainder of the funds to Pruitt & Pruitt. *See Akturk v.*

*Leeche*, No. 05-98-02095-CV, 2001 WL 619618, at *2 (Tex. App.—Dallas June 7, 2001, pet. denied) (without evidence that the money ever entered into defendant's possession, there was no claim for money had and received). FRS then concedes that it used the $150,000 to pay Alexander, another dissatisfied investor, rather than return the money to JMS Construction or Perley. There is no dispute in the record that Alexander invested $150,000 of his own money into the bond deal. Perley testified that Alexander threatened to expose Wilemon and Clark if he did not receive his investment back from them. Shortly thereafter, Alexander signed a release of all the parties in exchange for the sum of $150,000. Thus, FRS received from Ashmore funds in the amount of $150,000 which belonged to JMS Construction that FRS never returned to JMS Construction. *See MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet.) ("To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him."). We note that neither FRS or Clark were found to be in conspiracy with Ashmore as the question was abstractly asked in the charge. Nor is there any other basis in the charge such as agency or *respondeat superior* for which FRS could be liable for Ashmore's conduct in committing money had and received. Accordingly, we modify the amount of damages awarded against FRS on the claim of money had and received from $1.5 million to $150,000, but we reject FRS's argument that it is not liable at all for money had and received.

### 3) Conversion

The jury concluded that Ashmore and Clark converted monies in the amount of $1.5 million which belonged to JMS Construction. Ashmore and Clark assert that the evidence was legally and factually insufficient to support this conclusion.

### a) Elements of claim

Conversion is the wrongful exercise of dominion or control over the property of another

–26–

in denial of, or inconsistent with, the other's rights in the property. *See Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex. App.—Dallas 2003, pet. denied). To establish a claim for conversion of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). There can be no conversion, however, where the owner has expressly or impliedly assented to the taking or disposition of the property. *Robinson*, 117 S.W.3d at 39–40.

### b) Ashmore

Ashmore argues that because he acted in accordance with the terms of the December 15, 2006 letter and because he acted at the direction of Wilemon and Clark, both of whom who were authorized by Perley to make the transfer, there is no evidence that Ashmore committed an "unauthorized and wrongful assumption and exercise of dominion and control" over the funds. As this is Ashmore's sole argument as to why there is factually and legally insufficient evidence of conversion which we analyzed and rejected when asserted as to money had and received, we again reject this argument.[10] Accordingly, we disagree that the evidence was factually or legally insufficient to support a claim of conversion and we resolve Ashmore's fourth issue against him.

### c) Clark

Clark makes two arguments that there is insufficient evidence to support the jury's verdict for conversion against him. He first argues that there is no evidence that he committed an

---

[10] *See supra* Section C(2)(b). This argument was previously raised and rejected under Ashmore's argument for money had and received.

"unauthorized and wrongful assumption and exercise of dominion and control" over the funds because the facts cannot establish that he acted inconsistently with JMS Construction's rights as owner of the funds. We disagree for the reasons analyzed above when Ashmore made this argument regarding money had and received.

In summary, Ashmore testified that he received a call from Clark to transfer the funds. As stated above, Perley testified that he did not authorize the transfer of these funds out of Ashmore's account. Perley further testified that he was not asked by Clark for authority to transfer the $1.35 million and the $150,000 prior to or on December 14, 2006 when Ashmore transferred the funds. Thus, the record lacks evidence that Perley provided Clark with express or implied consent to transfer the $1.5 million to FRS ($150,000) and Pruitt & Pruitt ($1,350,000). Perley's execution of the December 15th letter did not authorize a transfer of the funds under the circumstances existing when Ashmore transferred them nordid it ratify Ashmore's previous transfer of the funds. Accordingly, when Clark instructed Ashmore to transfer the funds out of his account, Clark did so without the authorization of JMS Construction and he exercised dominion and control of the property in a manner inconsistent with JMS Construction's rights.

Clark's second argument is there was no evidence presented that Clark refused to return the money. We disagree. Perley testified that he spoke with Clark and Wilemon daily about the bond deal after the initial thirty-day time period passed and the bond had not closed. Perley testified that he continuously demanded the status of JMS Construction's money for the four years following his original investments. Perley testified that he was advised that Wilemon, Clark, and Ashmore were "working hard to get everyone their money" and that the promises and excuses continued up until the lawsuit was filed.

In his concluding paragraph under this issue, Clark adds a new challenge to the sufficiency of the evidence "to arrive at the amount of $1,050,000.00" awarded as damages

against him. He provides no argument or authorities or citation to the record supporting this challenge. An appellant's brief in the court of appeals "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to provide citations or argument and analysis as to an appellate issue may waive it. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010); *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.–Dallas 2012, pet. denied) ("Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint."). Here there is undisputed evidence that Perley through JMS Construction wire transferred $1.5 million to Ashmore's account which is the amount of damages the jury awarded against Clark and Ashmore to JMS Construction for its money had and received claim. So without argument and authorities referring to specific facts in the record to which we are cited, Clark's single sentence argument presents nothing for us to review. Accordingly, we do not consider Clark's challenge to the amount of $1,050,000.00 awarded against him in the trial court's judgment.

For these reasons, we disagree with Clark that the evidence was factually or legally insufficient to support a claim of conversion, so we resolve Clark's second issue against him.

### D. Final Judgment / Double Recovery

Ashmore, FRS, and Clark assert that the trial court erred in entering final judgment in favor of JMS Construction and against multiple defendants on multiple theories of recovery in direct violation of the one satisfaction rule. Ashmore, Clark, and FRS specifically argue that the jury awarded identical damages—$1.5 million—for each of JMS Construction's liability theories for conversion (against Clark, Ashmore, and Wilemon) and money had and received (against FRS and Ashmore). Perley justifies the multiple recoveries arguing that he personally suffered injuries, in addition to those suffered by JMS Construction, as a result of Ashmore releasing the

$1.5 million to the third parties. We agree with Ashmore, Clark, and FRS that the judgment violates the one satisfaction rule, so we reform the judgment.

Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury. *Id.* Here, JMS Construction transferred in the aggregate $1.5 million to Ashmore's account. Ashmore in turn transferred $150,000 of that to FRS and $1.35 million to a third party. Ashmore did not return to JMS Construction any part of the $1.5 million and FRS did not return to JMS Construction any of the $150,000 received from Ashmore. As measured against the jury charge with multiple theories of liability, Ashmore, FRS, and Clark committed technically different acts that caused JMS Construction to suffer a financial injury, but JMS Construction put a single amount of money into the transaction—$1.5 million—and suffered a single financial injury. To the extent that Perley is arguing that he was entitled to additional, personal damages for the claims of conversion and money had and received, the record is clear from the instruction in the damages questions in the charge that the jury only awarded damages to JMS Construction for its financial injury. Perley did not complain in the trial court or on appeal that the charge and resulting judgment did not include theories of liability and damages by which he might have recovered personally.

An appellate court has the power to modify a judgment when it appears from the face of the record that the modification is necessary and that the justice of the case requires it. *See C.G.V. v. Tex. Dept. of Human Res.*, 663 S.W.2d 871, 873 (Tex. App.—Beaumont 1983, no pet.). Accordingly, we sustain Ashmore's fifth issue and FRS and Clark's third issue and modify the judgment as follows:

> Plaintiff JMS Construction, Inc. has judgment jointly and severally against Defendants Financial Risk Specialists, Inc. and Joseph Ashmore in the principal

amount of $150,000.00, together with prejudgment interest on the aforementioned sum in the amount *of 5% per annum* accruing from December 14, 2006 through January 25, 2015, together with taxable court costs, together with post-judgment interest on the aforementioned sums in the amount of 5% *per annum* accruing from January 26, 2015 through the date on which the judgment is satisfied in full.

Plaintiff JMS Construction, Inc. has judgment jointly and severally against Defendants Allan Clark and Joseph Ashmore in the principal amount of $1,050,000.00, together with prejudgment interest on the aforementioned sum in the amount of 5% *per annum* accruing from December 14, 2006 through January 25, 2015, together with taxable court costs, together with postjudgment interest on the aforementioned sums in the amount of 5% *per annum* accruing from January 26, 2015 through the date on which the judgment is satisfied in full.

Plaintiff JMS Construction, Inc. has judgment severally against Defendant Joseph Ashmore in the principal amount of $1,500,000.00, together with prejudgment interest on the aforementioned sum in the amount of 5% *per annum* accruing from December 14, 2006 through January 25, 2015, together with taxable court costs, together with postjudgment interest on the aforementioned sums in the amount of 5% *per annum* accruing from January 26, 2015 through the date on which the judgment is satisfied in full.

Plaintiff JMS Construction, Inc. has judgment in the maximum, aggregate amount of $1,500,000.00.

**E.      Allocation of Costs**

Finally we consider the proper allocation of costs in this appeal. Rule of civil procedure 139 provides that where the judgment of the court of appeals is against an appellant but for a lesser amount than the trial court judgment, costs of appeal shall be borne by the appellee but costs of the trial court shall be borne by the appellant. *See* TEX. R. CIV. P. 139. Rule 139 further provides that if the judgment against an appellant is for the same or greater amount than the judgment of the trial court, appellee shall recover costs of both courts. *See id*. Further, we have discretion in more complex situations to allocate costs for good cause. *See* TEX. R. APP. P. 43.4; *Recognition Commc'n, Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 894 (Tex. App.—Dallas 2005, pet. denied) ("We conclude this language allows us to exercise our discretion to determine how 'costs' shall be awarded for an appeal as well as for trial in recognition of the result on appeal.").

Under our judgment, Perley and JMS Construction continue to prevail as they did in the trial court. But their recovery has been reduced to a single recovery of $1.5 million in the aggregate which approaches a fifty percent reduction. In addition, FRS obtained a 90% reduction of its judgment obligation. Ashmore and Clark, however, did not obtain a reduction of their individual judgment obligation, but Perley and JMS Construction are limited to a single recovery. That result increases the likelihood that Ashmore and Clark will discharge the judgment by each paying part of the judgment thereby paying less than under the trial court's judgment. We conclude, therefore, that Perley and JMS Construction should recover all of their trial court costs as provided for in its judgment, but that appellate court costs should be borne fifty percent by Perley and JMS Construction and fifty percent by Ashmore and Clark.

## CONCLUSION

For the reasons stated above, we modify the trial court's judgment as described above and we modify the amount of damages awarded against FRS on the claim of money had and received from $1.5 million to $150,000. As modified, we affirm the trial court's judgment.

/David W. Evans/
DAVID EVANS
150537F.P05                                     JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSEPH ASHMORE, JR., ALLAN CLARK AND FINANCIAL RISK SPECIALISTS, INC., Appellants

No. 05-15-00537-CV        V.

JMS CONSTRUCTION, INC. AND DAVID PERLEY, Appellees

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-10-13260.
Opinion delivered by Justice Evans.
Justices Myers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Plaintiff JMS Construction, Inc. has judgment jointly and severally against Defendants Financial Risk Specialists, Inc. and Joseph Ashmore in the principal amount of $150,000.00, together with prejudgment interest on the aforementioned sum in the amount *of 5% per annum* accruing from December 14, 2006 through January 25, 2015, together with taxable court costs, together with post-judgment interest on the aforementioned sums in the amount of 5% *per annum* accruing from January 26, 2015 through the date on which the judgment is satisfied in full.

Plaintiff JMS Construction, Inc. has judgment jointly and severally against Defendants Allan Clark and Joseph Ashmore in the principal amount of $1,050,000.00, together with prejudgment interest on the aforementioned sum in the amount of 5% *per annum* accruing from December 14, 2006 through January 25, 2015, together with taxable court costs, together with postjudgment interest on the aforementioned sums in the amount of 5% *per annum* accruing from January 26, 2015 through the date on which the judgment is satisfied in full.

Plaintiff JMS Construction, Inc. has judgment severally against Defendant Joseph Ashmore in the principal amount of $1,500,000.00, together with prejudgment interest on the aforementioned sum in the amount of 5% *per annum* accruing from December 14, 2006 through January 25, 2015, together with taxable court costs, together with postjudgment interest on the aforementioned sums in the amount of 5% *per annum* accruing from January 26, 2015 through the date on which the judgment is satisfied in full.

Plaintiff JMS Construction, Inc. has judgment in the maximum, aggregate amount of $1,500,000.00.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that costs should be borne fifty percent by David Perley and JMS Construction, Inc. and fifty percent by Joseph E. Ashmore, Jr. and Allan Clark.

Judgment entered this 13th day of December, 2016.